718 P.2d 1044 (1986)
NATIONAL FARMERS UNION PROPERTY AND CASUALTY CO., Petitioner,
v.
DISTRICT COURT for the CITY AND COUNTY OF DENVER, and the Honorable Alvin D. Lichtenstein, Respondents.
No. 85SA437.
Supreme Court of Colorado, En Banc.
May 19, 1986.
*1045 Moye, Giles, O'Keefe, Vermeire & Gorrell, Teryl R. Gorrell, Paul F. Lewis, Denver, for petitioner.
Pryor, Carney and Johnson, P.C., W. Randolph Barnhart, John L. Wheeler, Englewood, for respondents.
James S. Miller, Denver, for amicus curiae, Colo. Trial Lawyers Assn.
Lavinder, Ayd & Cairns, P.C., Patricia M. Ayd, Denver, for amicus curiae, Colo. Defense Lawyers Assn.
VOLLACK, Justice.
Petitioner National Farmers Union Property and Casualty Co. (NFU or petitioner) instituted this original proceeding to prohibit enforcement of an order issued by the respondent court compelling discovery of a memorandum regarding a lease guaranty insurance policy. The memorandum was prepared by outside counsel to inform petitioner's general counsel of the results of an *1046 investigation as to the facts regarding issuance of the policy and conclusions regarding whether a claim under the policy should be paid. We issued a rule to show cause and now discharge the rule.

I.
Petitioner is a defendant in the trial court proceedings. This case involves a claim for insurance benefits alleged to be payable from a lease guaranty insurance policy which purportedly insured the payment of sublease installments due from Union Square Development Company to Houston International Minerals Co. (HIMCO). Under the policy NFU guaranteed payment of rents which came due under the sublease during the policy period in the event of a default. HIMCO was subsequently acquired through merger by Tenneco Minerals Company (Tenneco), the plaintiff in the trial court proceedings. Following default on the sublease payments, NFU denied Tenneco's claim under the policy.
Tenneco sued petitioner under theories of breach of contract, breach of the covenant of good faith and fair dealing, fraud, breach of statutory duties and breach of fiduciary duties. Tenneco filed a motion to compel production of certain documents, including the memorandum at issue. Following an in camera review, the respondent court ruled the first twenty-seven and one-third pages of the memorandum were discoverable as ordinary business records. NFU filed a petition for writ of prohibition to bar disclosure of this portion of the memorandum, alleging it is protected by the attorney-client privilege and the work product doctrine.

II.
Initially we note that orders pertaining to discovery are interlocutory in character and generally are not reviewable in an original proceeding. However, we will exercise our original jurisdiction when an order will place a party at a significant disadvantage in litigating the merits of the case. Caldwell v. District Court, 644 P.2d 26 (Colo.1982); Hawkins v. District Court, 638 P.2d 1372 (Colo.1982). Should the information ordered compelled be used as evidence in this case, withdrawal of petitioner's counsel may be mandated if they are called to testify as witnesses. The circumstances involved in this case justify our exercise of original jurisdiction.
In general, discovery is allowed as to "any matter, not privileged, which is relevant to the subject matter involved in the pending action...." C.R.C.P. 26(b)(1). When resolving discovery disputes, the rules should be construed liberally to effectuate the full extent of their truth-seeking purpose, so in close cases the balance must be struck in favor of allowing discovery. Cameron v. District Court, 193 Colo. 286, 565 P.2d 925 (1977). Exceptions to the general policy favoring discovery include privileged information and those matters covered by the work product doctrine.
Information subject to the attorney-client privilege as codified in section 13-90-107(b), 6 C.R.S. (1985 Supp.),[1] in the vast majority of situations is not discoverable. Communications between attorney and client and advice given by the attorney must remain confidential to insure the proper functioning of the legal system. *1047 Observance of the obligation to hold inviolate the confidences developed in the attorney-client relationship not only facilitates the full development of facts essential to proper representation of the client but also encourages the general public to seek early legal assistance. Therefore, privileged information is excepted from the normal rules of discovery.
Limitations also exist as to discovery of information falling within the work product doctrine. Documents prepared in anticipation of litigation or for trial are discoverable "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." C.R.C.P. 26(b)(3).[2] Work product materials enjoy a qualified immunity from discovery because "the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to the orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production...." Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). As a result, the party seeking discovery must overcome the burden imposed by C.R.C.P. 26(b)(3) regardless of whether the materials are prepared for trial by an attorney or by some other agent of a party. Hawkins v. District Court, 638 P.2d 1372 at 1376-77 (Colo.1982). However, Rule 26(b)(3) is not intended to protect materials prepared in the ordinary course of business from general discovery. Id., 638 P.2d at 1377. See also Notes of Advisory Committee on 1970 Amendments to Federal Rules of Civil Procedure, 48 F.R.D. 487, 501 (1970).

III.
In Hawkins, we examined the issue of whether investigative reports and witnesses' statements compiled by an insurance adjuster in the course of investigating a fire loss with an insured are discoverable in an action by the insured against an insurance company for failing to pay the fire loss claim. The trial court held such information was privileged pursuant to the work product doctrine. After setting forth guidelines for determination of whether such information is protected by the work product doctrine from discovery requests, we remanded the matter for reconsideration by the trial court.
In deciding whether insurance claim investigative information is protected by the work product doctrine, we concluded that because a substantial part of an insurance company's business is to investigate claims, it must be presumed that such investigations are part of the normal business activity of the company. Therefore, reports and witnesses' statements compiled by or on behalf of the insurer in the course of such investigations are ordinary business records as distinguished from trial preparation materials. Hawkins v. District Court, 638 P.2d at 1378. On the other hand, under certain circumstances an insurance company's investigation of a claim may be conducted in anticipation of litigation. The test is whether, in light of the nature of the document and the factual situation in the particular case, the party resisting discovery can show the document *1048 was prepared in contemplation of specific litigation. Id., at 1379. Thus, under Hawkins, "a showing that a claims adjuster, or even a lawyer not acting as a legal counselor for the insurer, conducted an investigation of a claim, during which he compiled various reports and statements, would not be sufficient by itself to overcome the presumption of an ordinary business activity." Id. (emphasis added). In the matter at hand, the burden on NFU is to show the memorandum was prepared when a substantial probability of imminent litigation existed.
The record reflects that Tenneco made demand for payment of benefits under the policy by letter dated March 2, 1984. NFU referred the matter to its general corporate counsel, who in turn contacted outside corporate counsel to investigate whether the claim was covered under the policy. The resulting memorandum, which was dated April 24, 1984, was then submitted to general corporate counsel. By letter of June 15, 1984, NFU informed Tenneco that it decided to deny the claim, and on July 24, 1984, Tenneco filed suit. NFU maintains litigation was anticipated immediately after an initial demand was made under the policy. Because the lease guaranty policy was the only such policy of its type ever issued by NFU and the amount of the claim approached $1.8 million, among other factors, NFU contends the probability of litigation was imminent. The information contained in the memorandum is based almost entirely on statements taken from NFU employees concerning circumstances surrounding the issuance of the policy.
Here, the record adequately supports the trial court's determination that NFU has not met its burden of showing that the first twenty-seven and one-third pages of the memorandum were prepared in anticipation of litigation. At the time the investigation was conducted and the memorandum prepared, no lawsuit had been filed nor was there any indication that litigation was imminent. Indeed, until the investigation was completed and the reports submitted, NFU was itself uncertain whether or not it would deny the claim. It was only after NFU denied the claim that litigation arose. NFU may not avail itself of the protection afforded by the work product doctrine simply because it hired attorneys to perform the factual investigation into whether the claim should be paid. The attorneys were performing the same function a claims adjuster would perform, and the resulting report is an ordinary business record of the insurance company. Given these circumstances, we believe that the respondent court was fully justified in granting the motion to compel discovery of the twenty-seven and one-third pages of the memorandum.
Next, we must determine whether discovery of the memorandum is barred by the attorney-client privilege.

IV.
In addition to the work product doctrine, NFU asserts the attorney-client privilege protects the memorandum from discovery. NFU argues the memorandum was prepared by outside counsel in response to a request for legal advice relating to an investigation of the origination of the policy and the validity of the claim. As authority for the proposition that the document is privileged, NFU relies upon Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).
The Upjohn case addressed the scope of the attorney-client privilege in the corporate context and applicability of the work product doctrine in proceedings to enforce tax summonses. Upjohn's corporate general counsel received information that its foreign subsidiary had made payments to foreign government officials to secure government business. After consulting with outside counsel, corporate counsel decided to conduct an internal investigation of the alleged payments by sending questionnaires to foreign managers to determine the nature and magnitude of such payments. Both general counsel and outside counsel later personally interviewed these employees. While investigating the tax consequences of the payments, the Internal Revenue *1049 Service issued a summons requesting the results of the questionnaires. Upjohn refused to produce this information asserting the attorney-client privilege and the work product doctrine. The Supreme Court held the work product doctrine applied and the attorney-client privilege protected the information at issue.
The Supreme Court noted the attorney-client privilege exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice. Upjohn Co. v. United States, 449 U.S. at 390-91, 101 S.Ct. at 683.[3] Moreover, forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes. Id., 449 U.S. at 399, 101 S.Ct. at 687.
The Court, in determining that the attorney-client privilege applied to bar discovery of the information, relied on the following factors. First, the information was provided by corporate employees to counsel acting as counsel for the corporation at the direction of corporate supervisors. Second, the purpose of the communications was to allow counsel to provide legal advice to the corporation. Third, the employees were made aware that they were being questioned by attorneys so that the corporation could secure legal advice. Last, the employees were informed that the communications were highly confidential. Id., 449 U.S. at 394-95, 101 S.Ct. at 685.
None of the four factors relied on in Upjohn has been demonstrated here. The attorneys' activities, as detailed in the first twenty-seven and one-third pages of the memorandum, consisted of conducting interviews with various officers and employees for the purpose of determining the factual circumstances underlying the issuance of the policy. In this respect, the attorneys were acting more in the role of claims investigators than legal counsel for NFU. Second, the dominant purpose of the interviews, as strongly implied by the memorandum itself, was to provide the company with the factual circumstances underlying the issuance of the policy. Third, there is an absence of any showing by NFU that those persons questioned were ever informed that the attorneys were acting as company counsel or that the purpose of the investigation was to allow the company to obtain legal advice. Finally, there is no indication that the employees were ever told that the investigation was confidential. In the absence of these factors, the extension of the attorney-client privilege to the circumstances of this case results in cloaking with confidentiality communications that, so far as the record shows, would have been forthcoming even without the attorney-client privilege.
We conclude the attorney-client privilege does not protect the first twenty-seven and one-third pages of the memorandum because the information contained therein was not legal advice but the results of a factual investigation relating to the issuance of the policy. The portion of the memorandum which contains legal conclusions and a subsequent memorandum of a legal nature were not disclosed to Tenneco. The trial court judge reviewed the documents in camera following the procedure set forth in Martinelli v. District Court, 612 P.2d 1083 (Colo.1980), and correctly determined which document or portions thereof needed to be disclosed. Petitioner's contention that the attorney-client privilege *1050 protects the first twenty-seven and one-third pages of the memorandum from discovery is not tenable under these circumstances. We also find petitioner's other objections to disclosing this information to be without merit.
We hold that the portion of the memorandum ordered disclosed by the trial court judge is properly discoverable. It is protected by neither the work product doctrine nor the attorney-client privilege. The respondent judge was correct in determining the information contained therein could be discovered, and accordingly, we discharge the rule to show cause and remand the matter for further proceedings.
Rule discharged.
ROVIRA, J., dissents.
ROVIRA, Justice, dissenting:
I respectfully dissent.
Accepting the course of events as described in the majority opinion, I arrive at a different conclusion; namely, that the document in question is entitled to the protection afforded by the work product doctrine and the attorney-client privilege.
The majority rejects National Farmers Union's (NFU) reliance on Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), because none of the four factors relied on in Upjohn has been demonstrated here. Majority op. at 1049. I disagree.
Immediately upon receiving Tenneco's demand for payment, NFU referred the matter to its general counsel who, in turn, retained outside counsel to investigate the circumstances under which the policy was issued and whether Tenneco's claim should be paid. Outside counsel then initiated the investigation.
First, here, as in Upjohn, the information was provided by corporate employees to counsel acting as counsel for the corporation. Second, the purpose of the memorandum was to provide information to NFU concerning the facts and circumstances surrounding the issuance of the policy and, as stated in the memorandum, was prepared "in anticipation of litigation arising in connection with the policy." Third, the employees knew that they were being questioned by attorneys retained by NFU.
While not all of the factors referred to in Upjohn are present here, I believe that the majority opinion, in attempting to distinguish it, ignores its basic premise, protection of the attorney-client privilege. The purpose of the privilege is to encourage clients to make full disclosure to their attorneys, Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), and exists not only to protect the giving of professional advice but "also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn, 449 U.S. at 390, 101 S.Ct. at 683.
Where, as here, the client seeks the assistance of counsel to determine the operative facts and obtain legal advice based on those facts, I would, consistent with the purposes of the privilege, protect the memorandum against compelled disclosure.
NOTES
[1] Section 13-90-107(b) provides:

An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment; nor shall an attorney's secretary, paralegal, legal assistant, stenographer, or clerk be examined without the consent of his employer concerning any fact, the knowledge of which he has acquired in such capacity.
See also C.P.R. DR4-101. The purpose of the attorney-client privilege is to secure the orderly administration of justice by insuring candid and open discussion between attorneys and their clients without fear of disclosure. Losavio v. District Court, 188 Colo. 127, 533 P.2d 32 (1975). The privilege is available to corporations. United States v. Louisville & Nashville R. Co., 236 U.S. 318, 35 S.Ct. 363, 59 L.Ed. 598 (1915); A v. District Court, 191 Colo. 10, 550 P.2d 315 (1976), cert. denied, 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977).
[2] C.R.C.P. 26(b)(3) provides in pertinent part:

[A] party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) of this Rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
For a discussion of the background of the work product doctrine, see Hawkins v. District Court, 638 P.2d 1372 (Colo.1982).
[3] However, the Court noted a distinction between protecting disclosure of communications, which are privileged, and protecting disclosure of the underlying facts by those who communicated with the attorney, which are not protected by the privilege. The client may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney. Upjohn Co. v. United States, 449 U.S. at 396, 101 S.Ct. at 686. Thus, counsel for NFU is incorrect when he objects during depositions of NFU's employees based upon the attorney-client privilege or work product grounds when Tenneco's counsel inquires into areas which are covered in the memorandum. While the communication itself may be protected by the privilege, the facts underlying the communication are discoverable.