Michael C. BLACK, James Decker, Susan L. Kimbler, and Jerry Swingle, Taxpayers for the Animas River, Plaintiffs–Appellants,

v.

SOUTHWESTERN WATER CONSERVATION DISTRICT, and Frank (Sam) E. Maynes, Fred V. Kroeger, and Mary K. Fenswick, custodians of records, Defendants–Appellees.

No. 02CA0468.

Colorado Court of Appeals, Div. I.

May 8, 2003.

Rehearing Denied Aug. 21, 2003.

Michael C. Black, Pro Se.

James Decker, Pro Se.

Susan L. Kimbler, Pro Se.

Jerry Swingle, Pro Se.

Hill & Robbins, P.C., David W. Robbins, Jennifer H. Hunt, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge GRAHAM.

Plaintiffs, Taxpayers for the Animas River, Michael C. Black, James Decker, Susan L. Kimbler, and Jerry Swingle (collectively, Taxpayers), appeal the trial court's orders (1) determining that defendants, Southwestern Water Conservation District, Frank E. Maynes, Fred V. Kroeger, and Mary K. Fenswick, custodians of records (collectively, SWCD), properly refused to allow inspection of certain documents on the basis of the attorney-client privilege; (2) finding that the research and retrieval fee charged by SWCD was an appropriate regulation under the Open Records Act, § 24–72–201, C.R.S.2002; and (3) denying Taxpayers' request for attorney fees and court costs. We affirm.

The Animas–La Plata Project (ALP) was initiated to provide water to members of the Ute Mountain Ute and Southern Ute Indian tribes, as well as to businesses and farms in southwestern Colorado and northwestern New Mexico. The ALP has been the subject of substantial public interest and environmental review since it was authorized in 1968.

SWCD organizes special assessment districts, such as the Animas–La Plata Water Conservancy District (ALPWCD), to secure funds, resources, and operating expertise to manage the water resources within their specific river basins. ALPWCD is responsible for building the ALP. ALPWCD and SWCD have spent significant amounts of money on lawyers and lobbying fees to promote the ALP.

The individual plaintiffs are members of Taxpayers for the Animas River, a local, nonprofit, unincorporated citizens group concerned with the expenditure of tax dollars related to the ALP. Pursuant to the Colorado Open Records Act, Taxpayers sought access to SWCD documents related to the ALP. Although SWCD provided access to certain nonprivileged public records located in its office, it denied the existence of other documents, including billing records from SWCD's attorneys.

Taxpayers filed an application under § 24–72–204(5), C.R.S.2002, for an order directing

SWCD to show cause why inspection of withheld information should not be permitted. Taxpayers asserted that relevant documents were kept in either SWCD's offices, the offices of SWCD's attorneys, or some other location within control of SWCD. The trial court treated the show cause application as a complaint.

SWCD moved for summary judgment, contending that it provided Taxpayers access to all relevant documents in its possession. Taxpayers responded by filing two C.R.C.P. 56(h) motions, seeking a declaration that the following documents were public records: (1) a memo prepared by SWCD's attorney regarding SWCD's open records policy (G.C.memo); and (2) itemized billing records from SWCD's attorneys.

SWCD asserted that the G.C. memo and attorney bills were protected by the attorney-client privilege and that, in any event, because it does not maintain copies of attorney bills in its offices, Taxpayers had no right to inspect them.

The court denied SWCD's motion for summary judgment, noting that letters and billing statements from attorneys and lobbying firms indicated the existence of certain documents responsive to Taxpayer's requests and that "[a]ny lobbyists or law firm performing services on behalf of [SWCD] is undisputably an agent of [SWCD], and such records in their possession would be subject to disclosure." The trial court determined that SWCD's disclosure of all documents in its office did not satisfy the obligations under the Open Records Act and that SWCD raised a question of fact whether documents were in custody of an agent or employee.

As to Taxpayers' C.R.C.P. 56(h) motions, the trial court determined that attorney billing records were public records, but that the G.C. memo was protected by the attorney-client privilege, which was not waived. The trial court ordered SWCD to submit privilege logs identifying documents and the basis on which the privilege was being asserted.

SWCD produced a large number of documents determined by the court to be public records and provided Taxpayers with privilege logs. The letters and memoranda claimed by SWCD to be privileged included: (1) advice by attorneys regarding drafts of letters to government officials or third parties regarding SWCD's position on legislation, amendments, negotiations, and project revisions; (2) analysis of the effect of legislative drafts proposed by legislators, opponents, or project participants; (3) analysis and recommendations regarding proposed legislation; and (4) analysis of the effect of negotiations in requiring amended legislation and further environmental review.

Taxpayers filed a motion to compel under C.R.C.P. 37, contending, among other things, that SWCD was estopped from asserting a claim of privilege because it denied the existence of documents for five years instead of asserting a privilege claim; that the attorney-client privilege was not absolute and was outweighed by the public's right to know; and that lobbying activities by attorneys could not give rise to a claim of privilege.

The court determined that SWCD was not estopped from asserting the attorney-client privilege and that "the correspondence and memoranda, with limited exceptions, contain legal advice concerning the legislation, negotiations, litigation, and meetings which are the subject of the documents." The court noted that "SWCD had an expectation of privacy in such documents; almost without exception, they are clearly identified as privileged communications."

The trial court also found a common legal interest existed between certain proponents of the ALP, which entitled the proponents to exchange documents without waiving the attorney-client privilege.

The following documents were determined to be unprotected by the attorney-client privilege: (1) public documents attached to memos or correspondence; (2) transmittal letters, scheduling memos, and lists of meeting participants containing no discussion of legal issues; (3) letters to and from third parties, who shared a common legal interest, seeking to enlist their support for the ALP or advising them of SWCD's position; (4) a contract between SWCD and a lobbying firm and bills and activity reports from that lobbying firm; and (5) a letter from another lobbying firm, responding to audit issues.

Taxpayers filed an amended and supplemental complaint, alleging that SWCD's responses to requests for documents under the Open Records Act were insufficient and not made in a reasonable time and that the research and retrieval fee was invalid under the Open Records Act.

The only issues presented at trial were whether SWCD's failure fully to comply with the mandates of the Open Records Act was arbitrary or capricious and whether SWCD was justified in charging a research and retrieval fee. Taxpayers stated that they had inspected all the records requested and that "there's nothing else to look at." The trial court affirmed its previous decisions regarding attorney-client privilege and found that SWCD's failure to comply fully with the requirements of the Open Records Act was not arbitrary or capricious and that the research and retrieval fee was a valid regulation under the Open Records Act.

## I.

Taxpayers contend that the trial court erred in finding that certain documents were protected by the attorney-client privilege and therefore were not available for inspection under the Open Records Act. We disagree.

■ The Colorado Open Records Act contains a broad legislative declaration that all public records shall be open for inspection unless specifically excepted by law. Section 24–72–201. Consonant with that policy mandate, a public official has no authority to deny any person access to public records absent a specific statute permitting the withholding of the information requested. *Denver Publ'g Co. v. Dreyfus,* 184 Colo. 288, 520 P.2d 104 (1974).

Section 24–72–204, C.R.S.2002, sets forth numerous statutory exemptions for denying inspection of records, including "[t]rade secrets, privileged information, and confidential commercial, financial, geological, or geophysical data furnished by or obtained from any person." Section 24–72–204(3)(a)(IV), C.R.S. 2002.

■ The privileges for attorney-client communication and attorney work product established by common law have been incor-

porated into the Open Records Act. *City of Colo. Springs v. White,* 967 P.2d 1042 (Colo. 1998); *Denver Post Corp. v. Univ. of Colo.,* 739 P.2d 874 (Colo.App.1987).

■ The attorney-client privilege is codified in Colorado by statute and operates to protect communications between attorney and client relating to legal advice. *Wesp v. Everson,* 33 P.3d 191 (Colo.2001); *Gordon v. Boyles,* 9 P.3d 1106 (Colo.2000). The privilege extends only to matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations. *Gordon v. Boyles, supra.* Furthermore, "the privilege applies only to statements made in circumstances giving rise to a reasonable expectation that the statements will be treated as confidential." *Lanari v. People,* 827 P.2d 495, 499 (Colo.1992).

■ The burden of establishing the applicability of the attorney-client privilege rests with the claimant of the privilege, and the burden of establishing a waiver is on the party seeking to overcome the claim of privilege. *Clark v. Dist. Court,* 668 P.2d 3 (Colo. 1983).

## A.

■ We first reject Taxpayers' contention that the trial court erred in ruling that SWCD was not estopped from asserting the attorney-client privilege.

■ The burden of establishing estoppel falls on the party asserting it, and all elements of equitable estoppel must be shown. The party to be estopped must know the facts and must intend that its representation be acted on so that the other party is justified in relying upon the represented facts. Also, the party asserting estoppel must be ignorant of the actual facts and must have reasonably relied, to its own detriment, on the other party's conduct or misrepresentation. *Cont'l W. Ins. Co. v. Jim's Hardwood Floor Co.,* 12 P.3d 824 (Colo.App.2000).

■ Whether the circumstances of a particular case reveal a representation and reasonable reliance giving rise to equitable

estoppel is a question of fact. Findings of fact must be accepted on review, unless they are so clearly erroneous as not to find support in the record. *Cont'l W. Ins. Co. v. Jim's Hardwood Floor Co., supra.*

Here, the trial court found that Taxpayers did not change their position as a result of SWCD's delay in asserting the attorney-client privilege, and so there was no showing of reasonable reliance resulting in a detrimental change in position. Because the trial court's finding is supported by the record, we will not disturb it on appeal.

### B.

■ We also reject Taxpayers' contention that the trial court erred in determining that certain documents constituted legal advice rather than lobbying activities and were therefore protected by the attorney-client privilege.

■ We review the trial court's conclusions pursuant to an abuse of discretion standard. *City of Colo. Springs v. White, supra; see also In re Sealed Case,* 121 F.3d 729, 740 (D.C.Cir.1997)(noting that appellate court ordinarily reviews trial court's ruling that privilege applies to documents "only for arbitrariness or abuse of discretion"); *cf. Bond v. Dist. Court,* 682 P.2d 33, 40 (Colo.1984)(holding that, so long as trial court applies correct legal standard, "[d]iscovery rulings are ordinarily within the discretion of the trial court").

Because lawyers sometimes act as lobbyists, the issue has arisen as to whether the attorney-client privilege protects communications made in the course of a lawyer's lobbying efforts. The inquiry is fact-specific. *In re Grand Jury Subpoenas,* 179 F.Supp.2d 270 (S.D.N.Y.2001).

■ A lawyer who occasionally acts as a lobbyist is not precluded from acting as a lawyer and having privileged communications with a client who is seeking legal advice. Many lawyers "have expertise in special areas of knowledge that enhances their skill as lawyers, and that does not diminish their legal status." *In re Grand Jury Subpoenas, supra,* 179 F.Supp.2d at 285 (quoting *Mont-*

*gomery Co. v. MicroVote Corp.,* 175 F.3d 296, 302 (3d Cir.1999)).

■ However, "[i]f a lawyer happens to act as a lobbyist, matters conveyed to the attorney for the purpose of having the attorney fulfill the lobbyist role do not become privileged by virtue of the fact that the lobbyist has a law degree or may under other circumstances give legal advice to the client, including advice on matters that may also be the subject of lobbying efforts." *In re Grand Jury Subpoenas, supra,* 179 F.Supp.2d at 285 (quoting Edna Stein Epstein, *The Attorney–Client Privilege & the Work Product Doctrine* 239 (2001)). Summaries of legislative meetings, progress reports, and general updates on lobbying activities do not constitute legal advice and therefore are not protected by the attorney-client privilege or work product doctrine. *In re Grand Jury Subpoenas, supra.*

Lobbying is defined as "communicating directly, or soliciting others to communicate, with a covered official for the purpose of aiding in or influencing" the drafting of or action on any bill. Section 24–6–301(3.5)(a), C.R.S.2002. Lobbying does not include "communications made by an attorney-at-law when such communications are made on behalf of a client whose name has been identified and when such communications constitute the practice of law subject to control by the judicial branch of the state of Colorado." Section 24–6–301(3.5)(e), C.R.S.2002.

■ Because Taxpayers broadly refer to categories of documents they assert have been improperly included in SWCD's privilege logs, we decline to address Taxpayers' concerns absent concrete controversies over specific documents. Thus, our review is limited to three memoranda addressed to ALPWCD that Taxpayers specifically identified as being wrongfully withheld.

Here, the trial court conducted an in camera review and determined that some documents related to lobbying activities and were therefore public records, including letters and memoranda to and from state and national public officials, records of Senate hearings, Senate bills, comments of Colorado's Attorney General, and SWCD's policy for

access to public records. Documents containing legal advice on how to proceed with lobbying efforts or how to respond to Taxpayers' Open Records Act requests were deemed to be protected by the attorney-client privilege. The trial court specifically found that the three memos were records of ALPWCD, not of SWCD, and thus not the subject of this action, and that the memos constituted attorney-client privileged communications.

Like the trial court, we have conducted our own examination of the three memos and agree that they represent legal advice regarding ALP negotiations and lobbying efforts and are not communications made to a public official for the purpose of influencing legislation.

Thus, we decline to disturb the trial court's finding that the three memos contained legal advice and were therefore protected by the attorney-client privilege.

## C.

■ Taxpayers also contend that the trial court erred in finding that certain privileged documents exchanged with third parties remained protected by the common interest privilege. We are not persuaded.

■ The common interest privilege is not an independent basis for privilege, but an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to third parties. *Wesp v. Everson, supra.*

■ It is well established that not every disclosure of attorney-client communications constitutes a waiver of the privilege. Communications shared with third persons who have a common legal interest with respect to the subject matter thereof will be deemed neither a breach nor a waiver of the confidentiality surrounding the attorney-client relationship. *Metro Wastewater Reclamation Dist. v. Cont'l Cas. Co.,* 142 F.R.D. 471 (D.Colo.1992).

■ The common interest doctrine does not require existing or impending litigation. *Metro Wastewater Reclamation Dist. v. Cont'l Cas. Co., supra.* It includes pre-existing confidential communications and documents that are shared during a common enterprise. *In re Grand Jury Subpoenas,* 902 F.2d 244 (4th Cir.1990). Accordingly, when a party invokes the common interest privilege, the court must focus on the circumstances surrounding the disclosure of the communications or documents rather than on when the communications or documents were generated. *Transmirra Prods. Corp. v. Monsanto Chem. Co.,* 26 F.R.D. 572 (S.D.N.Y.1960).

■ The privilege applies only to communications given in confidence, *United States v. Weissman,* 195 F.3d 96 (2d Cir.1999), and intended and reasonably believed to be part of an on-going and joint effort to set up a common legal strategy. *United States v. Schwimmer,* 892 F.2d 237 (2d Cir.1989); *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.,* 805 F.2d 120 (3d Cir.1986).

Here, in finding that the common interest doctrine applied, the court stated: "[T]he following parties entered into a 'Binding Agreement' a/k/a an Agreement in Principle (or AIP) in June 1986, agreeing among other things, to share the costs for the [ALP]: Southern Ute Tribe, Ute Mountain Tribe, San Juan Water Commission, [ALPWCD], State of Colorado (through the AG's office), and the United States Government." The court stressed that "neither Public Service Co. nor the Navajo Nation were signatories to the AIP; thus, the common interest would not apply to correspondence to or from those entities or their representatives."

Although Taxpayers assert that the trial court based its findings on facts not in evidence, namely, the AIP, they attach a copy of the AIP to their opening brief and argue that, because SWCD was not a signatory to the agreement, the common interest doctrine does not apply to documents exchanged between SWCD and other proponents of the ALP. However, because the AIP is not dispositive of whether the common interest doctrine applies, and because there is ample evidence in the record to support the trial court's findings, we conclude that Taxpayers' argument is misdirected.

The AIP represents only a portion of the entire ALP project. Therefore, it cannot be the sole basis for determining which parties share a common legal interest in the implementation of the ALP.

It is undisputed that SWCD is a proponent of the ALP. It shares an office and legal counsel with the ALPWCD, and there is an agreement among SWCD, ALPWCD, and the Ute Indian tribes pursuant to which they will all be represented by the same public relations and lobbying firm.

Furthermore, ALPWCD was specifically created by SWCD for the purpose of securing funds and operating expenses to manage the ALP. SWCD's role is to help ALPWCD promote the ALP. This relationship clearly establishes a common legal interest not only between SWCD and ALPWCD, but also between SWCD and the other ALP proponents. The trial court found, with record support, that the Navajo Nation and Public Service Company were not part of the common interest because they opposed certain aspects of the ALP and, thus, their interests were not aligned with those of the ALP proponents.

Thus, there is sufficient evidence that, because SWCD shared a common interest with other proponents of the ALP, documents exchanged among those interested parties were protected by the common interest privilege.

### D.

■ Taxpayers also argue that the trial court erred in finding that the G.C. memo was protected by the attorney-client privilege. They argue that it was disclosed in a public meeting and, thus, the attorney-client privilege was waived. We disagree.

■ Communications between an attorney and client that are disclosed to third parties outside of the attorney-client relationship are not protected. *Gordon v. Boyles, supra; see also People v. Tippett,* 733 P.2d 1183 (Colo.1987)(because information at issue was known to third parties and not confidential, it was not protected by the attorney-client privilege).

Here, the G.C. memo was a presentation to SWCD's board of legal analysis regarding the "Colorado Open Meetings Law and Open Records Law." Although the existence of the memo was disclosed at a public meeting, there is no evidence in the record that a public discussion of its contents occurred or that it was disseminated to anyone other than board members. Minutes from the public meeting indicate that the memo was distributed to SWCD's board by its attorneys during an executive session, when no members of the public were present. Taxpayers failed to present contrary evidence to show that the privilege attached to the G.C. memo was waived.

■ Taxpayers alternatively assert that the G.C. memo was presented at an illegally convened executive meeting in violation of the Open Meetings Law. However, because they did not raise this argument in the trial court, we do not address it on appeal. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.,* 832 P.2d 718 (Colo.1992)(arguments never presented to, considered, or ruled upon by a trial court may not be raised for the first time on appeal).

### E.

We also reject Taxpayers' contention that the trial court applied the wrong legal standard when assessing the attorney-client privilege claims.

In its January 2002 order the trial court stated:

And as I said in my earlier order, I'm inclined to think that the attorney/client privilege should be at a minimum carefully construed, and I declined to adopt [Taxpayers'] suggestion that I have to construe it as narrowly as possible. In order to give effect to the privilege and make it meaningful, I think it has to be given some latitude.

In its "earlier order" the trial court, relying on a California case, explained that:

The apparent contradiction between whether the attorney-client privilege should be strictly construed or liberally construed appears to be that in attempting to establish an attorney-client relationship, or where the relationship is not clearly established, the privilege is to be strictly

construed.... But where the relationship has been established, the basic policy behind the attorney-client privilege to promote the relationship by safeguarding the confidential disclosures of the client and the advice given by the attorney, then the policy supports a liberal construction in favor of the exercise of the privilege.

See People v. Velasquez, 192 Cal.App.3d 319, 328, n. 4, 237 Cal.Rptr. 366, 371 n. 4 (1987).

When the trial court's January 2002 statement is read in conjunction with its earlier order, it is clear that the trial court properly differentiated between the legal standard used to determine whether an attorney-client relationship has been established in the first instance and the legal standard used to determine the reach of the attorney-client privilege once established. Furthermore, the trial court expressly relied on Gordon v. Boyles, supra, to determine the ambit of the attorney-client privilege.

Based on the entire record, we conclude that the trial court applied the proper legal standard in assessing the attorney-client privilege claims and, despite its ambiguous reference to a double standard, adhered to the principles espoused in Gordon v. Boyles, supra.

## II.

■ Taxpayers next contend that the trial court erred in finding that the research and retrieval fee—$15.00 per hour and $20.00 per hour for exceptionally voluminous requests—was an appropriate regulation under the Open Records Act. Again, we disagree.

Section 24–72–203(1)(a), C.R.S.2002, permits the records custodian to make such rules and regulations "as are reasonably necessary for the protection of such records and the prevention of unnecessary interference with the regular discharge of the duties of the custodian or the custodian's office."

Statutory construction involves a question of law. Fogg v. Macaluso, 892 P.2d 271 (Colo.1995). In interpreting a statute, we must give effect to the intent of the General Assembly. Dawson v. Reider, 872 P.2d 212 (Colo.1994). To discern that intent, we look to the language employed in the statute.

Applehans v. Farmers Ins. Exch., 68 P.3d 594 (Colo.App.2003). If the words used are plain and unambiguous, our task is accomplished by giving effect to the commonly accepted meaning of those words. Brock v. Nyland, 955 P.2d 1037 (Colo.1998).

If the statutory language does not clearly establish the General Assembly's purpose, or if the statute appears to conflict with other provisions, then we may determine the meaning of the statute by considering other factors, such as legislative history, prior law, the consequences of a given construction, and the end to be achieved by the statute. Section 2–4–203, C.R.S.2002; Martin v. People, 27 P.3d 846 (Colo.2001).

Taxpayers urge us to apply the canon of construction expressio unius est exclusio alterius—the inclusion of one thing implies the exclusion of another. Taxpayers argue that, because § 24–72–306(1), C.R.S.2002, specifically permits criminal justice agencies to "assess reasonable fees, not to exceed actual costs, including but not limited to personnel and equipment, for the search, retrieval, and copying of criminal justice records," absence of such language in the Open Records Act indicates that no research and retrieval fee is allowed. However, because it is not entirely clear from § 24–72–203(1)(a) whether a research and retrieval fee may be charged, we elect to examine legislative history and intent.

■ The Open Records Act strikes a balance between the statutory right of members of the public to inspect and copy public records and the administrative burdens that may be placed upon state agencies in responding to such requests. Pruitt v. Rockwell, 886 P.2d 315 (Colo.App.1994).

Although the Open Records Act does not expressly require the payment of a fee to exercise the right of inspection, legislative history reflects that this omission was intentional. An earlier draft contained a provision for inspection "without charge," but this language was deleted because "it was felt that in some cases the custodian's rules and regulations might include the establishment of nominal fees." Tax Data Corp. v. Hutt, 826 P.2d 353, 357 (Colo.App.1991)(quoting Colo-

rado Legislative Council, Research Publ. # 126, *Open Records for Colorado* (1967)). Nominal is defined as "trifling, esp[ecially] as compared to what would be expected." *Black's Law Dictionary* 1071 (7th ed.1999).

Here, the trial court found that the specific legislative history allowed assessment of a nominal research and retrieval fee. We conclude that the trial court's finding is supported by the legislative history and aim of the Open Records Act.

There is support in the legislative history to suggest that there was no legislative intent to prohibit charging some fee, albeit nominal. Therefore, we cannot conclude that the express allowance of research fees in the context of criminal records by implication forecloses a custodian from charging a nominal fee for retrieving or compiling other non-criminal public data for inspection. Thus, although the trial court's conclusion that the research and retrieval fee was reasonably necessary for the protection of the records and the prevention of unnecessary interference with the discharge of the custodian's duties may not be warranted by the language and history of the Act, the statute supports the court's finding that the research and retrieval fees were nominal in comparison to the time spent responding to the volume of requests and court orders and did not constitute a burden contrary to the spirit of the Open Records Act.

## III.

■ We also reject Taxpayers' contention that the trial court erred in finding that SWCD's failure fully to comply with the mandates of the Open Records Act was neither arbitrary nor capricious and that they were not entitled to an award of attorney fees and costs under the former version of § 24–72–204(5).

Section 24–72–204(5) formerly provided: "[U]pon a finding that the denial [of the right of inspection] was arbitrary or capricious, [the trial court] may order the custodian personally to pay the applicant's court costs and attorney fees in an amount to be determined by the court." This provision was

deleted in 2001. Colo. Sess. Laws 2001, ch. 286 at 1074.

■ A court considering whether an act is arbitrary or capricious must determine whether the conduct in question "reflects a conscientious effort to reasonably apply legislative standards." *Daniels v. City of Commerce City*, 988 P.2d 648, 652 (Colo.App.1999)(quoting *Comm. for Better Health Care v. Meyer*, 830 P.2d 884, 896 (Colo.1992)).

Although the trial court used the word "conscious" instead of "conscientious," the entirety of the record reflects that the trial court properly relied on the standard articulated in *Daniels v. City of Commerce City*, *supra*, to determine whether SWCD's conduct was arbitrary or capricious. Using the *Daniels* standard, the trial court conducted a thorough analysis of SWCD's conduct, including SWCD's concerns about unauthorized access to records; the ability of the office manager to respond effectively to Taxpayers' voluminous requests; SWCD's good faith attempts to comply with requests, including notifying Taxpayers when further responsive documents were found; and SWCD's claim of the attorney-client privilege.

The trial court's detailed analysis mirrors the controlling case law, and we agree that SWCD's conduct "reflects a conscientious effort to reasonably apply legislative standards." Thus, the trial court did not abuse its discretion in denying Taxpayers' request for attorney fees and costs. *See Lacy v. Rotating Prods. Sys., Inc.*, 961 P.2d 1144 (Colo.App.1998)(the credibility of witnesses and the sufficiency, probative effect, and weight of the evidence, as well as any inferences and conclusions to be drawn from the evidence, are all within the province of the trial court when it sits as the trier of fact).

## IV.

Last, Taxpayers contend that the trial court committed several "structural errors," including treating their show cause action as a complaint and not issuing a trial management order. We disagree.

Structural error applies to "structural defects" in a criminal trial that affect "the entire conduct of the trial from beginning to end" such that the "criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *People v. Price*, 969 P.2d 766, 768–69 (Colo.App.1998)(quoting *Rose v. Clark*, 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460, 470 (1986)). We have found no civil case that applies structural error analysis. In any event, we find no basis for concluding that Taxpayers were deprived of a fair trial.

The orders are affirmed.

Judge VOGT and Judge STERNBERG * concur.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.