24CA1225 Moffat Education v Moffat School 05-22-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1225
Moffat County District Court No. 23CV30047
Honorable Brittany Schneider, Judge

---

Moffat County Education Association,

Plaintiff-Appellant,

v.

Moffat County School District RE-1 and Moffat County School District RE-1
Custodian of Records,

Defendants-Appellees.

---

ORDER AFFIRMED

Division IV
Opinion by JUDGE GOMEZ
Freyre and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 22, 2025

---

Euell Thomas, Rory M. Herington, Denver, Colorado, for Plaintiff-Appellant

Hoskin Farina & Kampf P.C., David A. Price, Andrew H. Teske, Drew Kraniak,
Grand Junction, Colorado, for Defendants-Appellees

¶ 1     Plaintiff, Moffat County Education Association (the Association), appeals the trial court's order denying its request for records from defendants Moffat County School District RE-1 (the District) and Moffat County School District RE-1 Custodian of Records (the Records Custodian), under the Colorado Open Records Act (CORA), § 24-72-203, C.R.S. 2024.  The District and the Records Custodian disclosed parts of the subject report, and the trial court ruled that the other parts of the report were not subject to disclosure under CORA.  Consistent with the trial court's ruling, we conclude that (1) at least some of the undisclosed portions of the report are protected from disclosure by the attorney-client privilege and (2) the remaining portions are protected from disclosure by the deliberative process privilege.

## I.     Background

¶ 2     The Moffat County Board of Education (the Board) requested an investigation after an incident in which an elementary school in the District replaced several windows and a District administrator took some of the old windows home.  The Board directed its attorney, David Price, to determine whether there had been any improper use or misappropriation of District property.  At the same

time, the Board also directed Price to assess the organizational health of the District's central office administration and staff. Price and his firm engaged Jane Quimby and Quimby & Associates, LLC to assist in the investigation.

¶ 3 As a product of that investigation, Quimby and Price developed a report — the Quimby Report. The report's executive summary indicates that the investigation consisted of a "comprehensive review of relevant documentation, including e-mail communications and policy guidelines," and "[m]ore than thirty individual interviews . . . [with] the Superintendent, District administrators, staff, building leaders, teachers, Board members and former employees of the District."

¶ 4 After the investigation concluded, the Association filed a request under CORA seeking disclosure of several records relating to the administration of the District, including the Quimby Report. The District and the Records Custodian provided all the requested information except the Quimby Report, which they withheld on the basis of the attorney-client privilege. Eventually, they provided the executive summary and factual findings sections of the report, as well as the total number of pages and a list of the report's headings.

But they continued to deny access to the remainder of the report, asserting that it was subject to the attorney-client privilege.

¶ 5    The Association brought the underlying complaint and application for a show cause order under CORA.

¶ 6    After a hearing and an in camera review of the Quimby Report, the trial court denied the Association's requested relief on two bases — the attorney-client privilege and the deliberative process privilege.  On appeal, the Association contends that the court erred in its application of both privileges.  We set out the relevant legal standards and then assess each privilege in turn.

## II.    CORA Standards and Standard of Review

¶ 7    CORA provides that "[a]ll public records shall be open for inspection by any person at reasonable times," except as otherwise provided.  § 24-72-203(1)(a).  "Public records" include "all writings made, maintained, or kept by the state, any agency, institution, . . . or political subdivision of the state . . . for use in the exercise of functions required or authorized by law or administrative rule or involving the receipt or expenditure of public funds."  § 24-72-202(6)(a)(I), C.R.S. 2024.

¶ 8      Privileged information, including information protected by the attorney-client privilege or the deliberative process privilege, is not subject to public inspection under CORA. § 24-72-204(3)(a)(IV), (XIII), C.R.S. 2024; *DiPietro v. Coldiron*, 2022 COA 121, ¶ 19.

¶ 9      A trial court's ruling on whether the attorney-client or deliberative process privileges preclude public disclosure under CORA presents a mixed question of fact and law. *Bjornsen v. Bd. of Cnty. Comm'rs*, 2019 COA 59, ¶ 39. We review the court's factual findings for clear error, meaning we will uphold such findings as long as there is record evidence to support them. *Id.*; *see also Galiant Homes, LLC v. Herlik*, 2025 COA 3, ¶ 22. But we review the court's ultimate conclusions on application of the two privileges for an abuse of discretion. *See Black v. Sw. Water Conservation Dist.*, 74 P.3d 462, 468 (Colo. App. 2003) (reviewing under an abuse of discretion standard a trial court's conclusions regarding application of the attorney-client privilege in a CORA case); *City of Colorado Springs v. White*, 967 P.2d 1042, 1057 (Colo. 1998) (reviewing under an abuse of discretion standard a trial court's conclusions regarding application of the deliberative process privilege in a CORA case); *see also Land Owners United, LLC v. Waters*, 293 P.3d 86, 95

(Colo. App. 2011) ("When reviewing matters of discovery and privilege, we apply an abuse of discretion standard.").

¶ 10    We decline the Association's invitation to apply a de novo standard to the ultimate determination of whether the attorney-client and deliberative process privileges apply. The Association relies on cases concerning interpretation of CORA's statutory language. *See, e.g., Harris v. Denver Post Corp.,* 123 P.3d 1166, 1170-75 (Colo. 2005) (interpreting the statutory term "criminal justice records"); *Simpson v. Harmer,* 2024 COA 30, ¶¶ 14-49 (interpreting the statutory terms "public records," "work product," and "prepared for elected officials"). But, as the cases cited above demonstrate, we apply an abuse of discretion standard to questions concerning application of the attorney-client privilege and deliberative process privilege exceptions to disclosure under CORA.[1]

¶ 11    A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair or is based on an erroneous application of the law. *Land Owners United,* 293 P.3d at 95.

---

[1] Nonetheless, even if we applied the de novo standard, it wouldn't change the result because we agree with the trial court's conclusions in applying the two privileges.

¶ 12    Because CORA's public policy favors disclosure, we construe exceptions and exclusions to CORA narrowly. *Simpson*, ¶ 17.

### III.    Attorney-Client Privilege

¶ 13    We first address the trial court's application of the attorney-client privilege. It appears the court ruled that this privilege applies to all the undisclosed portions of the Quimby Report. We conclude that, at a minimum, the court didn't clearly err or abuse its discretion by applying this privilege to the undisclosed portions of the report that set forth legal advice. *See Million v. Grasse*, 2024 COA 22, ¶ 29 ("[W]e may affirm a trial court's judgment on any basis supported by the record.").

### A.    Relevant Legal Standards

¶ 14    The privilege for attorney-client communications has been incorporated into CORA. *Black*, 74 P.3d at 467; *see also* § 24-72-204(3)(a)(IV).

¶ 15    "The attorney-client privilege extends only to matters (1) communicated by or to the client in the course of gaining counsel, advice, or direction about the client's rights or obligations; and (2) under circumstances giving rise to a reasonable expectation that the statements will be treated as confidential." *Bjornsen*, ¶ 54.

¶ 16     The burden of establishing the applicability of the attorney-client privilege rests with the party claiming the privilege, and the burden of establishing a waiver rests with the party seeking to overcome the claim of privilege.  *Black*, 74 P.3d at 467.

## B.     Application

¶ 17     The trial court concluded that the undisclosed portions of the Quimby Report are protected by the attorney-client privilege.  The Association challenges that conclusion.  Having reviewed the Quimby Report in camera, as well as the record, we discern no clear error or abuse of discretion in the trial court's decision as it applies to the undisclosed portions of the report that set forth legal advice.

¶ 18     In determining that the attorney-client privilege applies, the court observed that "the [a]ttorney is Mr. Price, and the [c]lient is the [Board]."  The court found that the undisclosed parts of the report "contain[] a combination of facts, opinions, and recommendations based on the interview process completed by Ms. Quimby at the direction of Mr. Price."  The court seemingly determined that all of those parts fall within the attorney-client privilege, explaining, as to the more factual parts, that "the information provided through the investigative process by

employees of the [D]istrict [was] designed to assist Mr. Price in providing advice to the Board through the Quimby Report."

¶ 19 The Association makes several arguments challenging this ruling. First, it argues that the Quimby Report isn't protected by the attorney-client privilege because it doesn't contain any communications between an attorney and a client. Relatedly, it argues that there are no "direct communications" in the report between Price and the Board or any Board members.

¶ 20 But in concluding that the report contains communications between Price, as an attorney, and the Board, as his client, the court relied on the following factual findings:

- Price and Quimby were in regular communication throughout the investigative process.

- The employees' statements during the interviews were made for the purpose of assisting Price in providing legal advice to the Board.

- Price contributed to the Quimby Report, "specifically in the recommendations made and the analysis of the factual assertions provided."

- The recommendations in the Quimby Report "come in the form of legal advice."

¶ 21 To the extent that the Association challenges these findings and cites evidence that might have supported contrary findings, we perceive no clear error. *See Galiant Homes*, ¶ 22. The engagement letter between Price's firm and Quimby & Associates provides that Quimby will conduct the investigation but that "it is not Quimby's role to provide advice or counsel regarding any legal aspects of the project." Rather, the letter states that Price and his firm "may provide legal advice to the District that incorporates, includes or relies upon" the information collected in the course of the investigation. And Price testified that he and Quimby worked on the report together and that he provided "at least some, if not all, of the . . . legal parts of the analysis."

¶ 22 Nor do we perceive any abuse of discretion in the court's application of the attorney-client privilege to those portions of the Quimby Report that offer legal advice based on the information gleaned in the investigation. It is true that the privilege doesn't apply to communications where a lawyer is acting solely in an investigative capacity, instead of as a legal counselor. *Munoz v.*

*State Farm Mut. Auto. Ins. Co.*, 968 P.2d 126, 130 (Colo. App. 1998). The privilege does, however, apply to "the giving of professional advice to those who can act on it," as well as "the giving of information to the lawyer to enable him to give sound and informed advice." *Nat'l Farmers Union Prop. & Cas. Co. v. Dist. Ct.*, 718 P.2d 1044, 1049 (Colo. 1986); *accord Denver Post Corp. v. Univ. of Colo.*, 739 P.2d 874, 880 (Colo. App. 1987). And, certainly, the trial court acted within its discretion in concluding that the legal advice Price included in the report is subject to the attorney-client privilege.

¶ 23    We reject the remainder of the Association's arguments as follows:

- *Employee statements*: We needn't consider whether the attorney-client privilege extends to the reporting of employee statements from interviews with Quimby, *see Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981), because we're limiting our application of this privilege to those portions of the Quimby Report that set forth legal advice. As we discuss in the next section, the other portions of the report — including those summarizing the investigative findings from employee interviews —

properly fall within the scope of the deliberative process privilege.

- *Work product doctrine*: It's irrelevant that the Quimby Report wasn't prepared in anticipation of litigation. That argument pertains to the work product doctrine, *see Nat'l Farmers*, 718 P.2d at 1047-48 — a basis the District and the Records Custodian didn't rely on and the trial court didn't cite in support of nondisclosure.

- *Waiver of the privilege*: The District didn't waive the attorney-client privilege by asserting it as a basis to resist disclosure of the Quimby Report or by providing general testimony (through its attorney) about the report at the hearing to resolve the issue of privilege. The authority the Association cites relates to the assertion of a legal claim or defense that depends on privileged materials, thereby placing the privileged materials at issue, and in no way suggests that merely asserting the privilege places the potentially privileged materials at issue. *See, e.g., People v. Trujillo*, 144 P.3d 539, 543 (Colo. 2006).

11

¶ 24    Accordingly, we affirm the trial court's application of the attorney-client privilege as to the portions of the Quimby Report that set forth legal advice.

## IV.    Deliberative Process Privilege

¶ 25    We now turn to the trial court's application of the deliberative process privilege. Although it appears the trial court ruled that this privilege applies to the entire Quimby Report, we don't consider the privilege's application to the undisclosed portions of the report that set forth legal advice, which we've already determined are protected from disclosure by the attorney-client privilege. As to the remaining undisclosed portions of the report, we conclude that the court didn't clearly err or abuse its discretion by applying the deliberative process privilege. *See Million*, ¶ 29.

### A.    Relevant Legal Standards

¶ 26    The deliberative process privilege — which the supreme court in *White* first determined applies to disclosure under CORA, *see White*, 967 P.2d at 1054-56 — is now codified at section 24-72-204(3)(a)(XIII). *See Land Owners United*, 293 P.3d at 95-96.

¶ 27    The deliberative process privilege is a qualified privilege aimed at "protect[ing] the frank exchange of ideas and opinions critical to

the government's decisionmaking process where disclosure would discourage such discussion in the future." *White*, 967 P.2d at 1051. Thus, a key question in determining whether the privilege applies is whether disclosure of the subject material "would expose an agency's decisionmaking process in such a way as to discourage discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.*

¶ 28 Materials must satisfy three criteria in order to fall within the deliberative process privilege. *See id.* at 1051-52.

¶ 29 First, the materials must be predecisional, meaning they were generated before the adoption of an agency policy or decision. *Id.* at 1051. Thus, the privilege doesn't protect communications made after a decision and designed to explain that decision. *Id.* In this respect, courts distinguish "[d]ocuments representing the ideas and theories that go into the making of policy" — which are privileged — from "binding agency opinions and interpretations" that the agency "retain[s] and refer[s] to as precedent" and that constitute the agency's policies themselves — which are not privileged. *Id.* at 1052 (quoting *Sterling Drug, Inc. v. Fed. Trade Comm'n*, 450 F.2d 698, 708 (D.C. Cir. 1971)). Moreover, "[a] document from a subordinate

13

to a superior official is more likely to be predecisional, 'while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made.'" *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)).  Materials that are predecisional generally retain their protection even after a decision is made unless the decision-maker incorporates them by reference, or expressly adopts them, in the final decision.  *Id.*

¶ 30   Second, the materials must be deliberative, meaning they are "reflective of the give-and-take of the consultative process."  *Id.* at 1051.  "In determining whether material is deliberative, courts have distinguished between 'advisory materials which truly reflect[] the deliberative or policymaking processes of an agency' and 'purely factual, investigative material' which is not protected."  *Id.* at 1052 (alteration in original) (quoting *Env't Prot. Agency v. Mink*, 410 U.S. 73, 89 (1973)).  Although the privilege generally applies more to opinions and advisory materials than to purely factual investigative materials, it also protects factual materials that are "so inextricably intertwined with the deliberative sections of the documents that [their] disclosure would inevitably reveal the government's

14

deliberations." *Id.* (quoting *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)).

¶ 31 And third, a court must find that the materials are "so candid or personal that public disclosure is likely to stifle honest and frank discussion within the government." § 24-72-204(3)(a)(XIII); *accord White*, 967 P.2d at 1052. In doing so, the court must "weigh, based on the circumstances presented in the particular case, the public interest in honest and frank discussion within government and the beneficial effects of public scrutiny upon the quality of governmental decision-making and public confidence therein." § 24-72-204(3)(a)(XIII). This includes consideration of such factors as "the relevance of the evidence, whether there is reason to believe the [materials] may shed light on government misconduct, whether the information sought is available from other sources and can be obtained without compromising the government's deliberative processes, and the importance of the material to the discoverant's case." *White*, 967 P.2d at 1054.

¶ 32 It is the government's initial burden to provide sufficient information to show that these three criteria are satisfied. *Id.* at 1053. If it does so, "[t]he trial court should honor the claim of

privilege unless the party seeking discovery makes a preliminary showing that the material may not be privileged or that there is some necessity for its production," in which case the court should review the materials in camera and then determine the applicability of the privilege. *Id.* at 1054.

¶ 33    Applying these standards, the supreme court in *White* held that a trial court hadn't abused its discretion by determining that a report generated by an outside consultant as part of an internal evaluation was protected by the deliberative process privilege. *Id.* at 1045, 1056-58. The supreme court agreed with the trial court that the report was "predecisional in that it was designed to guide the [agency and its administrator] in developing strategies to improve the [agency]." *Id.* at 1057. The court also agreed that the report was deliberative, as it was "largely composed of employees' opinions as to the strengths and weaknesses of the [agency] and its administrator," which had been obtained "to assist the decisionmaking process rather than to serve as an expression of a final agency decision." *Id.* Finally, the supreme court noted that the report contained "employees' candid and personal views about the [agency] and its administrator" and, "[a]s the trial court [had]

found, the knowledge that these views may be disclosed publicly [wa]s likely to discourage such frankness in the future." *Id.*

### B. Application

¶ 34 The trial court concluded that the undisclosed portions of the Quimby Report met all three requirements for application of the deliberative process privilege. The Association challenges each of these determinations. But, having reviewed the Quimby Report in camera, as well as the record, we discern no clear error or abuse of discretion in the trial court's thorough, well-reasoned decision as it relates to the remaining undisclosed portions of the report (other than those that set forth legal advice).

¶ 35 First, the trial court found, based on the hearing testimony, that the report is predecisional, as it "was designed to provide investigation and recommendations to address the cultural and organizational concerns within the [District]," "was not created after a final decision was made about any issue contained in the report," and "[wa]s not designed to explain why the [District] made any specific decision." Rather, the court explained, "[t]he testimony is quite clear that the Quimby Report was requested to provide information to assist in the decision-making process." The court

17

also concluded that the material didn't lose its protected status by being incorporated by reference or expressly adopted in any final decision, reasoning that the court "ha[d] seen no decision made by the [District] that incorporates by reference or expressly adopts the contents of the [r]eport."

¶ 36     The record supports the court's findings and indicates that the remaining undisclosed portions of the Quimby Report are predecisional in nature.  Indeed, as in *White,* those parts of the report "contain[] observations on the current atmosphere and suggestions on how to improve it" and were "designed to guide the [District] in developing strategies [for] improve[ment]."  967 P.2d at 1057.  Additionally, the record supports the court's conclusion that the report didn't lose its protected status because there was no indication that the District had expressly incorporated by reference or adopted any of the report's contents in its final decision-making. *See id.* at 1052.

¶ 37     Second, the trial court found, again based on the hearing testimony, that the Quimby Report is deliberative.  The court explained that "the testimony makes clear that the report went through more than one draft, and that at least one member of the

18

Board, [the Board President], was involved in lengthy discussions surrounding the contents of the report with Mr. Price." The court also noted that, as in *White,* the report's authors (Price and Quimby) "did not possess the authority to promulgate final decisions for the agency" but only "to provide suggestions to the decision-makers," which they did in the report.

¶ 38    The court's findings on this issue, as it pertains to the remaining undisclosed portions of the report, likewise are supported by the record. Much like the report at issue in *White,* these parts of the report are "largely composed of employees' opinions as to the strengths and weaknesses of the [District] and its [leadership]," which were gathered "to assist the decisionmaking process." 967 P.2d at 1057. To the extent that the Association suggests that the deliberative process privilege can't protect the statements employees made during interviews because they are factual in nature, we disagree. As we've indicated, the deliberative process privilege extends to "factual material that is 'so inextricably intertwined with the deliberative sections of the documents that its disclosure would inevitably reveal the government's deliberations.'" *Id.* at 1052 (quoting *In re Sealed Case,* 121 F.3d at 737).

¶ 39    And third, the trial court decided, as a matter of its discretion, that "the [Board's] interest in keeping the material confidential, to avoid the chilling effect that is not merely speculative, outweighs the [Association's] interest in disclosure of the materials."  Weighing the factors outlined by the supreme court in *White*, the trial court found:

> Like in *White,* the report at issue here contains information collected not from leadership, but from employees of the organization.  While those employees are not specifically named in the [r]eport, the statements contained in the [r]eport and made by employees are quite candid and personal, and given the nature and size of the community, the concern that employees could be identified by their comments is a concern.  Of even greater concern is the fact that these people contributed their frank and honest opinions for the report with the promise of anonymity. Based on the promises made and the contents of the report, the disclosure of the [r]eport would have a chilling effect on future honest and frank communications.
>
> . . . .
>
> As noted by [the Board President] in her testimony, the requirement of disclosure would chill her willingness, as President of the Board, to make similar requests and initiate similar investigations in the future.  This is separate from the more speculative chilling effect on those who might have freely and openly

20

participated in such an investigation in the future. The public disclosure of the report could also place current and former employees in a position where their comments are publicly identified and create backlash for their participation in the [r]eport and for their candid and frank remarks made under the belief that they would remain confidential. These concerns outweigh the generalized concern that the disclosure of the report might uncover government misconduct.

¶ 40  Through this extensive reasoning, "the court properly balanced the public's interest against the government's interest." *Land Owners United*, 293 P.3d at 96. Thus, we discern no abuse of discretion in the court's determination that the balancing of interests favored nondisclosure.[2]

¶ 41  Accordingly, we affirm the trial court's application of the deliberative process privilege as to the remaining undisclosed

---

[2] The Association also argues that any potential concerns against disclosure have lessened in the time since the Quimby Report was issued. Because the Association didn't make this argument in the trial court, and because our review is limited to determining whether the trial court's decision was clearly erroneous or an abuse of discretion based on the evidence before the court at the time, we decline to consider this argument now. *See Core-Mark Midcontinent Inc. v. Sonitrol Corp.*, 2016 COA 22, ¶¶ 20-27 (declining to consider arguments that weren't made in the trial court); *In re Marriage of Capparelli*, 2024 COA 103M, ¶ 37 (discerning whether a trial court acted within its discretion "[b]ased on the record that was before the court at the time of [its decision]").

portions of the Quimby Report (other than those portions that set forth legal advice).

## V. Disposition

¶ 42 The order is affirmed.

JUDGE FREYRE and JUDGE MEIRINK concur.