**FREEDOM NEWSPAPERS, INC., d/b/a Colorado Springs Gazette Telegraph; and Phillip Witherow, Plaintiffs-Appellees,**

v.

**The DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY, Defendant-Appellant.**

**No. 85CA0021.**

Colorado Court of Appeals, Division I.

May 15, 1986.

Rehearing Denied June 26, 1986.

Certiorari Denied (Railroad) Jan. 20, 1987.

Cooper & Kelley, P.C., Thomas B. Kelley, Denver, for plaintiffs-appellees.

Kathleen M. Snead, Denver, for defendant-appellant.

Robert S. Burk, General Counsel, Ellen D. Hanson, Associate General Counsel, Cecelia E. Higgins, Edward J. O'Meara, Washington, D.C., for amicus curiae I.C.C.

Lorraine Chang, John W. Humes, Jr., Kenneth P. Kolson, Howard D. Koontz, Albert W. Laisy, Richard A. Mehley, Nicholas P. Moros, James R. Paschall, Richard E. Weicher, Louis P. Warchot, Washington, D.C., for amicus curiae Association of American Railroads.

TURSI, Judge.

The Denver & Rio Grande Western Railroad (railroad) appeals from a decision of the district court ordering that certain coal transportation contracts between the railroad and the Colorado Springs Department of Public Utilities (city) be made available for inspection by Freedom Newspapers, Inc., doing business as the Colorado Springs Gazette Telegraph (newspaper). We affirm.

An action was filed by the newspaper pursuant to the Colorado Open Records Act, § 24–72–201, et seq., C.R.S. (1982 Repl. Vol. 10), seeking inspection of transportation contracts entered into between the city and the railroad. The city filed a motion to join the railroad as an indispensi-

ble party pursuant to C.R.C.P. 19 because of a confidentiality clause in each of the contracts. The trial court ordered that the railroad be made a party to the lawsuit.

In that action, both the city and the railroad opposed disclosure on the grounds that the contracts were confidential commercial matters and that, therefore, publication is barred by the Open Records Act and federal law. The trial court ordered that the contracts be disclosed. This order, however, was stayed pending this appeal.

## I

■ In preserving its claimed right to confidentiality, the railroad contends that the Open Records Act does not require disclosure of these contracts. This contention is without merit.

"It is declared to be the public policy of this state that all public records shall be open for inspection by any person at reasonable times, except as provided in this part 2 or as otherwise specifically provided by law."

Section 24–72–201, C.R.S. (1982 Repl. Vol. 10). Additionally, § 24–72–202(6), C.R.S. (1982 Repl. Vol. 10) defines a "public record" as:

"[A]ll writings made, maintained or kept by the state or any agency, institution, or political subdivision thereof ... involving the receipt or expenditure of public funds."

This case concerns transportation contracts made by the Department of Public Utilities, an agency of the City of Colorado Springs. *See Charter of the City of Colorado Springs,* Article VI. The department's entry into contracts for the transportation of coal is an exercise of a function within the scope of its authority. Furthermore, although the railroad argues to the contrary, the parties to the original action stipulated that the contracts are "public records."

■ The railroad also contends that these contracts are exempt from disclosure under the Open Records Act because the department fulfills a proprietary rather than a governmental function. We reject this argument.

Finding no distinction between proprietary and governmental functions expressly declared in the Open Records Act, we decline to imply such a distinction. *See Lee v. City & County of Denver,* 29 Colo.App. 256, 482 P.2d 389 (1971). Thus, the contracts at issue in this case are subject to the Open Records Act unless they fit within one of the specific exceptions.

## II

The railroad claims that the contracts fit within two exceptions to the disclosure requirements. We disagree.

### A

■ The railroad asserts that inspection of the contract is improper pursuant to § 24–72–204(1)(b), C.R.S. (1982 Repl. Vol. 10) because such inspection is contrary to federal law. The railroad bases this assertion on its conclusion that the Staggers Act of 1980, codified at 49 U.S.C. § 10101, et seq. (1982), bars release of railroad transportation agreements. We find no such bar.

The Staggers Act represents comprehensive federal legislation deregulating the nation's rail industry. *See Water Transport Ass'n v. Interstate Commerce Commission,* 722 F.2d 1025 (2d Cir.1983). A major aspect of this act is to allow rail carriers to conduct their operations by contract similar to other nonregulated businesses. *Water Transport Ass'n v. Interstate Commerce Commission, supra.*

In 49 U.S.C. § 10713 (1982), Congress changed the traditional method of purchasing rail services through the use of uniform public tariffs and permits rail carriers to enter into individual rate contracts, which must then be filed with the Interstate Commerce Commission for its approval. *See Water Transport Ass'n v. Interstate Commerce Commission, supra.* Certain information contained in the rate contract is summarized and made public; the remaining information is available from the Interstate Commerce Commission only when requested by certain specified par-

ties. The railroad in this case relies on this provision in support of its claim that transportation contracts may not be inspected by the newspaper.

Here, the contracts were not requested from the Interstate Commerce Commission. The contracts in this case make up part of the records of operation of a department of a governmental entity. Additionally, nothing in the federal statute purports to impose disclosure limitations upon the parties to the contract.

The federal statute relied upon by the railroad extends no further than to impose disclosure limitations against the Interstate Commerce Commission regarding contracts which are required to be filed with it. Thus, the Staggers Act provides the Interstate Commerce Commission the ability to regulate while still permitting confidential contract negotiation between the rail carriers and their customers.

In every respect applicable to the Open Records Act, the railroad stands in the same position as any other business. The release of these contracts with the city pursuant to the Open Records Act is proper and not in conflict with federal law.

### B

■ The railroad next contends that the contracts are exempt from public disclosure by § 24–72–204(3)(a)(IV), C.R.S. (1982 Repl. Vol. 10). We do not agree.

Similar to the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(4) (1982), the Colorado Open Records Act, in § 24–72–204(3)(a)(IV), permits the nondisclosure of:

"Trade secrets, privileged information, and confidential commercial, financial, geological, or geophysical data furnished by or obtained from any person."

The rationale for this exception is dual in nature. Not only does it encourage cooperation on the part of those who may not be required to provide information to a governmental agency, but it also protects the rights of those who are required to provide such information. *See National Park & Conservation Ass'n v. Morton,* 498 F.2d 765 (D.C.Cir.1974) (considering the commer-

cial and financial information exemption of FOIA).

In *National Park & Conservation Ass'n,* a two-part test for determining the confidentiality of commercial or financial matters was enunciated. To fit within this exemption of FOIA, such matters must be likely either: (1) to impair the government's future ability to gain necessary information; or (2) to cause substantial harm to the competitive position of the person providing the information.

■ In this case, the information was not obtained pursuant to a regulatory function that will be significantly impaired by disclosure. This information makes up part of the operational records of a governmental body which, under the announced public policy of this state, the public is entitled to inspect. Clearly, the public is entitled to know how its funds are expended. Without such information, the public is ·denied substantial information concerning the operations of a public agency which is to be operated in its behalf.

■ The trial court, in its order, balanced the commercial harm that could be caused by disclosure against the perceived benefits. *See Martinelli v. District Court,* 199 Colo. 163, 612 P.2d 1083 (1980). The trial court concluded that, while some harm may indeed befall the railroad because of disclosure, this harm is a cost of doing business with the government and that the benefits associated with disclosure outweigh the costs. *See Racal-Milgo Government Systems, Inc. v. Small Business Ass'n,* 559 F.Supp. 4 (D.D.C.1981).

In light of the strong presumption favoring public disclosure of all documents defined as public records, we find no error in the trial court's conclusions. *See Denver Publishing Co. v. Dreyfus,* 184 Colo. 288, 520 P.2d 104 (1974).

Judgment affirmed.

PIERCE and BERMAN, JJ., concur.