BOARD OF COUNTY COMMISSION-ERS OF the COUNTY OF BOUL-DER, Plaintiff–Appellant,

v.

James MARTIN, Defendant–Appellee.

No. 92CA1409.

Colorado Court of Appeals, Div. V.

June 3, 1993.

H. Lawrence Hoyt, Madeline J. Mason, Boulder County Atty., Boulder, for plaintiff-appellant.

James Martin, pro se.

Opinion by Judge DAVIDSON.

Plaintiff, the Board of County Commissioners for Boulder County, appeals from a judgment entered in favor of the defendant, James Martin, finding that a county zoning policy was preempted by § 42–15–101, et seq., C.R.S. (1984 Repl.Vol. 17), concerning motor vehicles as collectors' items. We affirm.

Martin owns residential property near the town of Lyons in unincorporated Boulder County. For a number of years before the events at issue here, he had kept numerous vehicles, operable and inoperable, on the property.

In 1990, the county filed a complaint in district court alleging that the storage of the vehicles violated the zoning resolution and seeking their removal. As a result of negotiations begun subsequent to the filing of the complaint, Martin removed the majority of the vehicles. He, however, retained several inoperable vehicles, asserting that he intended to license them as collectors' vehicles and store them on the property for restoration as a personal hobby.

In May of 1991, the county zoning administrator issued an enforcement policy permitting outdoor storage of one collectors' vehicle but requiring any additional such vehicles to be stored in a garage. Martin did not comply with the policy, and the zoning violation case proceeded to trial.

At trial, Martin argued that he was permitted by state statute to keep more than one collectors' vehicle in outdoor storage provided that he complied with the statutory screening requirements. The county contended that Martin must comply with the storage requirements outlined in the county's policy.

After a bench trial, the court concluded that the county enforcement policy impliedly conflicted with and was thus preempted by the statute. On motion for reconsideration, the court amended its order to conclude that the policy conflicted with the statute in its operational effect and found preemption on that basis.

On appeal, the county argues that the court erred in its finding of preemption. Martin, on the other hand, contends that the intent of the statute is to provide certain protections to motor vehicle collectors and that the policy is preempted to the

extent that it conflicts with the statutory provisions. We agree with Martin.

In 1973, the General Assembly enacted § 42–15–101, et seq., C.R.S. (1984 Repl.Vol. 17). That statute provides for the registration and storage of cars considered to be collectors' vehicles.

As pertinent here, § 42–15–103, C.R.S. (1984 Repl.Vol. 17) provides:

A collector may store motor vehicles, as described in section 42–15–101, or parts thereof, on his private property provided such vehicles and parts cars and the outdoor storage areas are maintained in such a manner that they do not constitute a health hazard, a safety hazard, or a fire hazard and are effectively screened from ordinary public view by means of a solid fence, trees, shrubbery, or other appropriate means. Such storage areas shall be kept free of weeds, trash, and other objectionable items.

Under the county zoning resolution in effect prior to the enactment of the statute, storage of inoperable vehicles was permitted only in junk yards, which were allowed only on property zoned general industrial. Martin's property is zoned rural residential. Thus, under the zoning law as then in effect, Martin was prohibited from storing inoperable vehicles of any sort on his property.

However, in May 1991, in light of the 1973 statute, the county land use department issued a policy revising the zoning division's enforcement position concerning storage of collectors' vehicles. The policy stated, in summary, that although all unlicensed or inoperable vehicles were previously regulated under the junk yard classification, in order to reconcile the "spirit" of § 42–15–103 and the provisions of the zoning resolution, new guidelines were being set forth for storage of licensed operable and inoperable collectors' vehicles.

Specifically, the policy first classified the storage of collectors' vehicles as a legal accessory use to a principal residential use of property in the unincorporated portions of the county. It allowed licensed, operable vehicles to be stored on residential property. It set no limit or storage requirements for such vehicles.

Licensed but inoperable vehicles and associated parts cars were also permitted. The policy allowed one such vehicle to be stored outdoors, provided that the storage area complied with the screening requirements of § 42–15–103. Any additional inoperable vehicles were required to be stored inside a garage or similar accessory storage building.

Martin contends, however, that under the statute he is permitted to keep more than one inoperable vehicle or parts car in an outdoor storage area on his private property as long as the storage area is effectively screened and complies with applicable health, safety, and fire hazard regulations. The policy's limitation of such storage, he argues, impermissibly conflicts with the statute. The county responds that the policy complements rather than frustrates the purposes of the statute. It argues that the intent of the statute was to leave enforcement of the provisions of the statute, including screening, to local authorities, and it asserts that it is in the best position to establish requirements for effective screening in its area of jurisdiction. We are unpersuaded by the county's argument.

■ Although a county is prohibited from adopting an ordinance which conflicts with a state statute, § 30–15–411, C.R.S. (1986 Repl.Vol. 12A), an ordinance and a statute may coexist as long as they do not contain express or implied conditions that are irreconcilably in conflict with each other. *Board of County Commissioners v. Bowen/Edwards Associates, Inc.*, 830 P.2d 1045 (Colo.1992). If there is a conflict, the local ordinance may be preempted. *C & M Sand & Gravel v. Board of County Commissioners*, 673 P.2d 1013 (Colo.App.1983).

We note that the local action taken here was not an ordinance but rather a policy announced by the county zoning administrator. However, because it was not properly raised as an issue by the parties here, and because of our resolution of the issue, we do not consider the effect, if any, of the difference between such a policy and an ordinance.

The supreme court most recently addressed preemption in *Board of County Commissioners v. Bowen/Edwards Associates, Inc., supra.* There, the court set forth three ways in which a state statute can preempt a county ordinance or regulation.

The first way is if the language of the statute leaves no room for local regulation by expressly indicating state preemption over the field. The second way is if the statute impliedly evinces a legislative intent to occupy completely a given field by reason of a dominant state interest. *Board of County Commissioners v. Bowen/Edwards Associates, Inc., supra.*

The statute at issue here contains no express language indicating legislative intent to preempt totally local regulation. Further, given the history of support for local control of land use issues, we do not believe that the statute impliedly seeks to occupy completely the field of collectors' car storage. *See C & M Sand & Gravel v. Board of County Commissioners, supra.*

The third way preemption may be found is if the operational effect of the local ordinance conflicts with the application of the statute. Preemption through operational effect can arise when the effectuation of the local interest would materially impede or destroy the state interest. *Board of County Commissioners v. Bowen/Edwards Associates, Inc., supra.*

In *Bowen/Edwards*, the court cited two cases in which the operational effect of local ordinances conflicted with state statutes. In *National Advertising Co. v. Department of Highways*, 751 P.2d 632 (Colo. 1988), both a municipality and the state had promulgated rules concerning advertising signs placed along roadways of the state highway system. Pursuant to its regulations, the city authorized the erection of a sign along a state highway. No permit was sought from the state and it was conceded that none would have issued as the sign violated the applicable statute.

The court, after determining that the control of outdoor advertising along state highways was a matter of mixed state and local concern, found that a vesting of exclusive control in the municipality would materially impede or destroy achievement of the state interest by permitting advertising forbidden by the state. The court then held that, as the ordinance permitted what the statute prohibited, the ordinance was preempted to the extent that it conflicted with the statute.

In *Lakewood Pawnbrokers, Inc. v. City of Lakewood*, 183 Colo. 370, 517 P.2d 834 (1974), a statute required that applicants for a pawnbroker license provide a single bond with two sureties on it. A local licensing ordinance required two bonds, each with a different surety. The court held that, while local regulation was permitted, the portion of the ordinance concerning sureties was invalid to the extent that it conflicted with the statute.

Here, we recognize that the county has legitimate concerns in maintaining coherent and uniform zoning regulations. *See C & M Sand & Gravel v. Board of County Commissioners, supra.* Moreover, given the strong traditional role local government plays in land use control, local authorities have an interest in ensuring that collectors' car storage complies with local regulations.

The statute, however, evidences the state's interest in the state-wide regulation of licensing and storage of collectors' vehicles and parts cars. Accordingly, we conclude that the outdoor storage of collectors' vehicles is a matter of mixed state and local concern. *See Board of County Commissioners v. Bowen/Edwards Associates, Inc., supra; National Advertising Co. v. Department of Highways, supra.*

Having concluded that the county may also regulate in the field, we must determine if the statute and the policy may coexist or whether the application of the policy materially impedes or destroys the effect of the statute. To do so, we must determine the scope and effect of the statute.

To determine the legislative intent of a statute, we first look to the statutory language itself and give effect to its terms. *Jones v. Cox*, 828 P.2d 218 (Colo.1992). If such a review does not fully reveal the

intended scope of a statute or if the scope remains unclear, we may look to the appropriate legislative history. Section 2–4–203, C.R.S. (1980 Repl.Vol. 1B); *People v. Terry*, 791 P.2d 374 (Colo.1990).

The county contends that the General Assembly did not intend to set specific requirements but merely intended to provide general guidelines for storage of collectors' vehicles with the interpretation and enforcement of those guidelines left to local authorities. It points out that local government has traditionally enforced regulations dealing with health, safety, and fire hazards. It also contends that standards for effective screening can best be determined by local zoning officials. Thus, in its view, the policy furthers the intent of the statute to allow storage of collectors' vehicles as long as they are screened from public view.

On the other hand, Martin contends that, based on the plain language of the statute's storage provisions, the policy conflicts with the statute as it restricts his ability to store vehicles outdoors. Although we do not agree with Martin that the plain language of the statute allow us to determine the scope and effect of the statute without resort to legislative history, we do agree with his proffered interpretation.

Section 42–15–103 expressly allows collectors to store approved vehicles and related parts cars in outdoor storage areas, with no specific limit on the number of vehicles and parts allowed. Further, it clearly requires that such vehicles, parts cars, and outdoor storage areas be properly maintained. Of key importance to our analysis here, however, is that it varies in specificity as to the enumerated maintenance requirements.

The statute initially requires that collectors must ensure that the collectors' vehicles, parts cars, and outdoor storage areas do not constitute "a health hazard, a safety hazard, or a fire hazard." Local authorities are generally in the best position to monitor and enforce health, safety, and fire concerns. See *C & M Sand & Gravel v. Board of County Commissioners, supra;* § 30–28–101, et seq., C.R.S. (1986 Repl.Vol.

12A). Further, nothing in the legislative history of the statute indicates that the General Assembly believed otherwise in regard to these matters. See Hearings on S.B. 147 before the Senate Transportation Committee, 49th General Assembly, First Session (March 7, 1973).

These general cautions stand in contrast to the specific provisions concerning screening. The statute provides that the outdoor storage areas are allowed as long as the areas are "effectively screened from ordinary public view by means of a solid fence, trees, shrubbery, or other appropriate means."

There is no history or tradition of local regulation of screening of collectors' cars. Further, discussion in the committee hearings indicated that the ability to keep collectors' vehicles and parts cars in outside storage was a chief concern of the proponents of the legislation. Hearings on S.B. 147 before the Senate Transportation Committee, 49th General Assembly, First Session (March 7, 1973).

Thus, given the statutory language and the legislative concern underlying enactment of the statute, we conclude that the intent of the statute is that collectors should be able to store vehicles and parts cars in outdoor storage areas so long as the areas are effectively screened from public view.

Screening using solid fencing, trees, or shrubbery is acceptable if effective. If these enumerated methods of screening are not effective, the statute provides that "other appropriate means" may be required.

■ If general words follow the enumeration of particular classes of things, the rule of *ejusdem generis* provides that the general words will be construed as applicable only to things of the same general nature as the enumerated things. *Martinez v. People*, 111 Colo. 52, 137 P.2d 690 (1943). Accordingly, we read the word "other" following the enumeration of specific means of screening as "other such like" methods in keeping with the intent of the statute.

■ Further, we conclude that, absent a clear legislative intent to provide for state enforcement of the statute, *cf.* § 42–3–128(8), C.R.S. (1984 Repl.Vol. 17), and based on our determination that the outdoor storage of collectors' vehicles is a matter of mixed state and local concern, the General Assembly intended that determination of the effectiveness of a particular method of screening is best left to local authorities to be made on a case by case basis. However, based on our reading of the statute, local authorities may not require additional methods without first determining that the enumerated permitted methods of trees, fences, or shrubs are unable to provide effective screening. We note that conditions may exist such that a proposed outdoor storage area simply cannot be effectively screened.

It is within this analytical framework that we examine the policy.

As we read the statute, local authorities are permitted to evaluate and regulate screening, subject to the above constraints. The county policy, however, essentially predetermines that the enumerated means are not effective for more than one vehicle as it provides that effective screening may be accomplished *only* through the use of a garage or other structure. Further, the policy provides that a collector may keep only *one* car in outdoor storage, whereas the statute provides no limitation on the number of vehicles or parts cars allowed in outdoor storage.

The policy thus conflicts with the statute in both of these respects. Consequently, the policy is preempted by the statute to the extent that the provisions of the policy regulating screening forbid what the statute permits. *Board of County Commissioners v. Bowen/Edwards Associates, Inc., supra.*

Accordingly, the judgment is affirmed.

HUME and TAUBMAN, JJ., concur.