LAND OWNERS UNITED, LLC, a Colorado limited liability corporation; and Land Owners United, Inc., a Colorado nonprofit corporation, Plaintiffs–Appellees,

v.

Marcia WATERS, Director of the Colorado Division of Real Estate; and the Colorado Board of Real Estate Appraisers, Defendants–Appellants.

No. 10CA1006.

Colorado Court of Appeals,
Div. VII.

Aug. 18, 2011.

As Modified on Denial of Rehearing
Sept. 29, 2011.

Certiorari Denied as Improvidently
Granted Sept. 6, 2012.

Law Office of Paul Zogg, Paul Zogg, Boulder, Colorado; Mark A. MacDonnell, Las Animas, Colorado, for Plaintiffs–Appellees.

John W. Suthers, Attorney General, Lisa Brenner Freimann, First Assistant Attorney General, Jack Wesoky, Senior Assistant Attorney General, Catherine Shea, Assistant Attorney General, Denver, Colorado, for Defendants–Appellants.

Opinion by Judge RICHMAN.

Defendants, Marcia Waters, director of the Colorado Division of Real Estate, and the Colorado Board of Real Estate Appraisers (collectively the Board), appeal from the district court order requiring disclosure of certain records under the Colorado Open Records Act (CORA), §§ 24–72–200.1 to –206, C.R.S.2010. We affirm.

## I. Factual Background

In fall 2007, the Colorado Division of Real Estate (Division) began receiving complaints and documentation regarding alleged abuse of a statewide program permitting tax credits for conservation easements. At a press conference held on November 20, 2007, previous director of the Division of Real Estate, Erin Toll, announced that in order to "curb the alleged abuse" arising from improper valuations of conservation easements, the Division, operating through the Board, had launched a statewide investigation of "suspect transactions" and "will aggressively pursue appraisers whose valuations of conservation easements are not credible." She stated that these investigations would be confidential under the Board's authorizing statute, § 12–61–710(7), C.R.S.2010, until the conclusion of the investigation.

On May 1, 2008, the Board issued a press release stating that, on an emergency basis to protect the public's "health, safety and welfare," and without holding a hearing, it had summarily suspended the license of William Milenksi, an appraiser from Swink, Colorado. The press release noted that Milenski had conducted numerous appraisals of conservation easements for identified land trusts. On July 11, 2008, the Board and Milenski entered into a stipulation and final agency order, pursuant to which Milenski permanently surrendered his appraiser's license. The final order did not state a reason for terminating his license.

In 2006, the Board had entered into a similar stipulation and final agency order, where it imposed probation and a fine on southern Colorado appraiser John Stroh. Again, no reason for the probation was identified in the order.

On May 1, 2008, in a press release issued in connection with the Milenski license suspension, the Board noted that Colorado's conservation easement program had come under "intense scrutiny ... in recent months upon allegations of major abuse of the program." According to a summary prepared by Director Toll for the Governor, a small group of appraisers performed hundreds of questionable conservation easement appraisals in areas including southern Colorado. According to Director Toll, up to $37 million in tax credits could be claimed by landowners who had used the questionable appraisers.

Plaintiffs, Land Owners United LLC and Land Owners United, Inc. (collectively Land Owners), comprise two nonprofit entities that together represent approximately eighty Colorado landowners whose conservation easement tax credits and deductions came under investigation by the Colorado Department of Revenue. Because of these investigations, between August and September 2009, Land Owners made a series of CORA requests seeking records pertaining to the Milenksi and Stroh proceedings, as well as information relating to the Board's investigation into allegations of abuse of Colorado's conservation easement program. The Board's responses to these requests led to this lawsuit.

## II. Procedural Background

On August 19, 2009, Land Owners submitted their first CORA request, asking for information on the Board's basis for its emergency action to summarily suspend Milenski's license, and the basis for its decision to accept Milenski's permanent suspension, including investigations into certain appraisals. In response to this request, Land Owners were invited "to schedule a time to view the

documents" they had requested. Land Owners made an appointment to view the documents the following day; however, the Board cancelled the appointment. On September 1, 2009, the Board wrote to Land Owners completely denying their request.

Land Owners submitted a second CORA request on September 8, 2009, seeking communications with third parties concerning the disciplining of appraiser Milenski. On September 22, 2009, having received no response, Land Owners brought this suit pursuant to CORA, challenging the Board's failure to produce any documents in response to their records request.

In their complaint, Land Owners alleged that the U.S. Internal Revenue Service and the Colorado Department of Revenue were challenging tax credits and deductions they took after donating conservation easements that were valued by the disciplined appraisers, and the tax agencies were basing their challenges on the Board's decisions to discipline the appraisers.

On October 2, 2009, the Board provided some responsive documents to the second request, but withheld others. Land Owners issued four more requests, as to which the Board again provided some, but not all responsive documents. In all, Land Owners issued six CORA requests. The Board justified its decision not to disclose the requested documents primarily by asserting three exemptions under CORA. The Board asserted that (1) most of the documents were exempt from disclosure under the investigatory files exemption, section 24–72–204(2)(a)(I); (2) six of the documents were exempt from disclosure pursuant to the deliberative process exemption, section 24–72–204(3)(a)(XIII); and (3) an unspecified number of documents was exempt from disclosure under the confidential information exemption, section 24–72–204(3)(a)(IV). The Board also asserted that e-mail addresses were exempt from disclosure under an express CORA exemption, § 24–72–204(2)(a)(VII), and some documents were protected by the attorney-client privilege.

On February 26, 2010, the district court held a show cause hearing, pursuant to the statute, as to all the requests submitted by Land Owners, and at which the burden was on the Board to show cause why the documents should not be produced. See § 24–72–204(5). The court received testimony and heard arguments presented by the parties, and subsequently conducted an in camera review of the disputed documents under seal. The court ultimately concluded that the Board failed to show cause why most of the requested public records should not have been released to Land Owners, but the court specified that some confidential information should be redacted from the records. The court also ruled that two documents were protected by the attorney-client privilege.

### III. Issues on Appeal

On appeal, the Board contends that the district court erred by holding that the three exemptions did not justify withholding disclosure of the records and by ordering redaction of specified information. We reject these contentions.

### IV. Analysis

The Board asserts that its investigatory files "contain *all* the records at issue in this case" with the exception of one record subject to the deliberative process privilege. We understand the Board's assertion to mean that if we conclude the investigatory files exemption of CORA applies here, we need not reach the district court's determination as to the applicability of other exemptions, with the exception of the one record that is allegedly protected by the deliberative process privilege. Accordingly, we first turn to the investigatory files exemption.

#### A. Investigatory Files Exemption

For at least two reasons, the district court rejected the Board's contention that CORA's investigatory files exemption applies to the records sought by Land Owners.

First, it concluded that to the extent that there is a conflict between the investigatory files exemption in CORA and provisions in the Board's authorizing statute—section 12–61–704(1)(c)(I), C.R.S.2010, which addresses disclosure of the Board's records generally, and section 12–61–710(7), C.R.S.2010, which

addresses complaints and results of investigations "during the investigatory period"—the latter provisions control "as the more specific applicable statute." Thus, the district court concluded, under section 12–62–710(7), the Board may withhold disclosure of investigatory files only during the investigatory period. Because the investigations of both Milenksi and Stroh were completed and final orders entered, the court concluded section 12–62–710(7) provided for disclosure, the CORA exemption did not apply here, and the files must be disclosed.

Second, the district court concluded that, in any event, the CORA investigatory files exemption would not preclude disclosure here. The court interpreted that exemption to apply only to records that relate to criminal law enforcement or are kept by agencies that have criminal law enforcement powers.

▉ The Board contends we should review this decision de novo. Land Owners contend that the correct standard of review is whether the district court abused its discretion because its conclusion is based on factual findings in an open records case. However, we disagree that the applicability of the investigatory files exemption requires an analysis of factual findings by the district court. Rather, the Board's contention requires us to review the district court's interpretation of CORA, and the interplay between CORA and the Board's authorizing statute. Questions of statutory interpretation are reviewed de novo. *Harris v. Denver Post Corp.*, 123 P.3d 1166, 1170 (Colo.2005).

### 1. The Board's Authorizing Statute

▉ Initially, we disagree with the district court's conclusion that the authorizing statute governs this case and mandates disclosure of these files. While the authorizing statute is more specific as to the functions and powers of the Board, and it contains a general policy to make records open to the public, *see* § 12–61–704(1)(c)(I)[1], the provision on which the district court relied, section 12–61–710(7)[2], does not expressly provide for disclosure of records. Rather, it expressly provides for the closure of records during the investigatory stage. Disclosure under that provision is only by negative implication. And any implied disclosure requirement is expressly subject under section 12–61–710(7), to the disclosure provisions of CORA. *See* §§ 24–72–203, 24–72–204.

### 2. CORA's Investigatory Files Exemption

The district court also found that even under the investigatory files exemption of CORA, the records could not be withheld. The investigatory files exemption provides that the custodian of any public records may deny the right of inspection of the following records, unless otherwise provided by law, on the ground that disclosure to the applicant would be contrary to the public interest:

> Any records of the investigations conducted by any sheriff, prosecuting attorney, or police department, any records of the intelligence information or security procedures of any sheriff, prosecuting attorney, or police department, or any investigatory files compiled for any other law enforcement purpose.

§ 24–72–204(2)(a)(I).

The Board asserts that in five of Land Owners' six requests, the records are exempt from disclosure as "investigatory files compiled for law enforcement purposes." It further asserts that disclosure would be against the public interest because it would impede

---

1. Section 12–61–704(1)(c)(I) provides: "In addition to all other powers and duties imposed upon it by law, the board has the following powers and duties:

 . . . .

 (c)(I) To keep all records of proceedings and activities of the board conducted under authority of this part 7, which records shall be open to the public inspection at such time and in such manner as may be prescribed by rules and regulations formulated by the board."

2. Section 12–61–710(7) provides: "Complaints of record in the office of the board and the results of staff investigations shall be closed to public inspection during the investigatory period and until dismissed or until notice of hearing and charges are served on a licensee, except as provided by court order. Complaints of record that are dismissed by the board and the results of investigation of such complaints shall be closed to public inspection, except as provided by court order. The board's records shall be subject to sections 24–72–203 and 24–72–204, C.R.S., regarding public records and confidentiality."

the Board's ability to effectively investigate appraisal matters.

In rejecting the Board's assertion of this exemption, and concluding that the exemption only applies to criminal investigations, the district court relied on the maxim of *expressio unius est exclusio alterius* (the inclusion of one thing implies the exclusion of another). The district court concluded that "[s]ince the specific terms of the statute ... all denote officials who possess criminal law investigative powers, the ordinary statutory construction would be to exclude from employing the exemption agencies such as the Board of Real Estate Appraisers which does not have criminal enforcement powers."

The district court also concluded that the Board abused its discretion in applying the CORA investigative files exemption because the introductory sentence of the subsection, permitting denial of record requests, is qualified by the phrase "unless otherwise provided by law." Because the district court had already concluded that the Board's authorizing statute provided for disclosure of investigatory files after the investigation was completed, it determined that the CORA exemption could not be asserted because disclosure was "otherwise provided by law."[3]

Accordingly, the district court rejected the Board's reliance on CORA's investigatory files exemption. The Board contends that the district court incorrectly interpreted this exemption to apply only to criminal investigations.

While we do not necessarily agree with the district court's reasoning, we agree that the investigatory files exemption of CORA does not support the Board's refusal to produce the records sought in this case. *See Wagner v. Hilkey*, 914 P.2d 460, 462 (Colo.App.1995) ("A correct judgment will not be disturbed on review, even if our analysis differs from that of the trial court."), *aff'd sub nom., Wagner v. Bd. of County Comm'rs*, 933 P.2d 1311 (Colo.1997); *LaFond v. Basham*, 683 P.2d 367, 369–70 (Colo.App.1984) (appellate court "will not disturb the trial court's deci-

sion merely because it assigned one incorrect reason for it").

CORA allows access to all public records not specifically exempted by law. *Denver Publ'g Co. v. Univ. of Colorado*, 812 P.2d 682, 683–84 (Colo.App.1990). As stated in section 24–72–201, "[i]t is declared to be the public policy of this state that all public records shall be open for inspection by any person at reasonable times, except as provided in this part 2 or as otherwise specifically provided by law."

To determine the meaning of a statute, we must ascertain and give effect to the intent of the General Assembly. *People v. Hernandez*, 250 P.3d 568, 570–71 (Colo. 2011); *Jefferson Cnty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo.2010). We look first at the language of the statute and give statutory words and phrases their plain and ordinary meaning. *People v. Blue*, 253 P.3d 1273, 1276–77 (Colo.App.2011); *People v. Davis*, 218 P.3d 718, 723 (Colo.App. 2008). This requires us to give effect to every part of the statute and avoid constructions that would render a part of the statute meaningless. *Mayo v. People*, 181 P.3d 1207, 1210 (Colo.App.2008); *see also* § 2–4–201(1)(b), C.R.S.2010; *Gerganoff*, 241 P.3d at 935 ("The language at issue must be read in the context of the statute as a whole and the context of the entire statutory scheme.").

If the statutory language is clear, we apply it. If the statutory language is ambiguous, we may use other tools of statutory interpretation to determine the General Assembly's intent, such as legislative history or the rules of statutory construction. *Crandall v. City & Cnty. of Denver*, 238 P.3d 659, 662 (Colo.2010).

Applying these recognized principles, we conclude that the language of the investigatory files exemption is ambiguous, and the legislative history of the provision is inconclusive. We nonetheless conclude that under the CORA framework, the exemption does

---

3. For the reasons stated above, we disagree that the Board's authorizing statute controls over the exemptions of CORA, and thus we also disagree with the district court's analysis of the applicability of the phrase "unless otherwise provided by law" as used in section 24–72–204(2)(a).

not permit withholding of the requested records.

### a. Statutory Language

■ The pertinent language of the exemption, contained in the third clause of the sentence, exempts from disclosure "any investigatory files compiled for any other law enforcement purpose." § 24–72–204(2)(a)(I). The phrase, "law enforcement purpose," is not defined in the statute. *See* § 24–72–202. On the one hand, it could mean only criminal law enforcement records, as the district court found, or on the other hand, it could also include records of civil law enforcement activity, as the Board urges. We conclude that this language is ambiguous, because it is susceptible of at least two different reasonable but conflicting interpretations. *See Farmers Ins. Exch. v. Bill Boom Inc.*, 961 P.2d 465, 469 (Colo.1998) (statutory language is ambiguous if it is susceptible of alternative constructions).

Because the first and second clauses of the exemption apply only to records kept by a "sheriff, prosecuting attorney, or police department," the exemption read as a whole suggests that the phrase "law enforcement purpose" in the third clause must mean the criminal law enforcement purpose carried out by agencies such as sheriffs, prosecutors, or police departments. The district court, applying the maxim *expressio unius est exclusio alterius,* so concluded. We conclude that the maxim does not apply here. The exemption is not a list of objects or functions that implies any object or function not listed is excluded.[4]

However, the principle of *ejusdem generis* might apply. "If general words follow the enumeration of particular classes of things, the rule of *ejusdem generis* provides that the general words will be construed as applicable only to things of the same general nature as the enumerated things." *Daniels v. City of Commerce City,* 988 P.2d 648, 651 (Colo.App. 1999) (quoting *Bd. of Cnty. Comm'rs v. Martin,* 856 P.2d 62, 66 (Colo.App.1993)). In interpreting a different CORA exemption, *Daniels* concluded that the general term at the end of the exemption must refer to information of the "same general nature" as the specified exempted information. *Id.* Applying that rule here, the phrase "any other law enforcement purpose" would refer back to the activities of a sheriff, prosecuting attorney, or police department, and limit the application of the exemption to criminal law enforcement activities.

However, including a reference to specific agencies in two clauses does not necessarily imply that the same agencies are the subject of the third clause. If the General Assembly had intended that result, it could easily have repeated the phrase "any sheriff, prosecuting attorney, or police department" in the third clause, just as it did in the second clause. Given that both the first and second clauses specify those agencies, and the third clause does not, it is equally plausible that the intent of the third clause was not to limit its application to the records of those agencies, but rather to expand the application of the exemption. Indeed, the use of the phrase "any other" preceding "law enforcement purpose" would suggest such an expansion.

We thus conclude that the exemption could be limited to criminal law enforcement purposes, as the district court found, or it could be applicable to civil law enforcement as well. Because the statutory language is ambiguous, we turn to the legislative history of the provision to aid in our interpretation. *See* § 2–4–203(1)(c), C.R.S.2010.

### b. Legislative History

The investigatory files exemption was included in CORA when it was first adopted in 1968.[5] A contemporary legislative report

---

4. An example of the proper application of the maxim *expressio unius est exclusio alterius* is found in *Reale v. Board of Real Estate Appraisers,* 880 P.2d 1205, 1207 (Colo.1994), where the court concluded that where the Colorado Constitution specified two qualifications for the office of County Assessor, the General Assembly was precluded from creating additional qualifications.

5. The original exemption language allowed the custodian to deny inspection of "records of investigations conducted by or of intelligence information or security procedures of any sheriff, district attorney, or police department or any investigatory files compiled for any law enforcement purpose." § 24–72–204(1)(a)(I), 1968 Colo. Sess.

supports an interpretation that the exemption was limited to criminal law enforcement activities. Colo. Legis. Council, *Report to Colorado General Assembly: Open Public Records for Colorado*, 46–126, 1st Sess., at xiv (1967). The report states: "[T]his language is designed to continue the present discretionary policies of law enforcement officials in releasing active criminal investigation records, confidential communications from other states, and procedures for handling major crimes and civil disturbances. Administrative and fiscal records of law enforcement offices would be open to public inspection." *Id.*

In 1977, the General Assembly enacted the Colorado Criminal Justice Records Act (CCJRA), the purpose of which was to make certain criminal justice records open for inspection by the public. *See* § 24–72–301(1), C.R.S.2010. In the same bill, the investigatory files exemption in CORA was repealed and the definition of "public records" was amended to exclude criminal justice records covered by CCJRA. § 24–72–202(6)(b)(I). However, the new CCJRA statute contained an exemption, using nearly identical phraseology to the repealed section of CORA, allowing a custodian of criminal justice records to deny inspection on the ground that

> disclosure would be contrary to the public interest, and unless otherwise provided by law, the custodian may deny access to records of investigations conducted by or of intelligence information or security procedures of any sheriff, district attorney, or police department or any *criminal justice* investigatory files compiled for any law enforcement purpose.

§ 24–72–305(5), C.R.S.2010 (emphasis added).

This exemption, by its plain language, and by its placement in CCJRA, was limited to criminal justice files compiled for law enforcement purposes. These legislative developments appear to indicate that the General Assembly intended certain criminal justice records compiled for law enforcement purposes to be exempt from disclosure under CCJRA, and no longer intended to provide

Laws 202 (repealed and reenacted 1977 and

an exemption from disclosure in CORA for any other investigatory files.

However, in 1988, the General Assembly amended the CCJRA by passing House Bill 1211, titled "An Act Concerning Criminal Justice Records." H.B. 1211, 56th Gen. Assemb., 2d Sess. (1988). The bill added what is now codified as section 24–72–308 to the CCJRA, providing for the sealing of arrest and criminal records other than convictions. Ch. 190, sec. 3, 1988 Colo. Sess. Laws 979–80. Essentially, this section allows a person to petition a district court to seal arrest and criminal records in cases where the person was not charged, or the case was "completely dismissed." *See* § 24–72–308(1). In the same bill, the legislature recreated and reenacted the investigatory files exemption in CORA, and codified it as section 24–72–204(2)(a)(I). Ch. 190, sec. 1, 1988 Colo. Sess. Laws 979.

Our review of the legislative proceedings in connection with House Bill 1211 does not reveal a definitive expression of why the General Assembly, when amending CCJRA to provide for the sealing of criminal records, also reenacted the CORA investigatory files exemption. Senator Wells commented during a hearing on the bill: "We have restored some language dealing with the custodians' right to protect the records of police departments or district attorneys or sheriff's office investigations while they're going on, investigations, so they don't become public records." This one comment could be understood to address "ongoing" investigations, and not the type of law enforcement activity at issue.

■ We may infer, however, that because the legislature was providing for the sealing of criminal justice records as part of CCJRA, the reenactment of the CORA investigatory files exemption was intended as a type of housekeeping measure, intended to ensure that criminal justice records, now sealed under CCJRA, would not be disclosed under CORA. We also note that the title of House Bill 1211 suggests the bill was intended to apply only to "criminal justice records." The title of a bill is a factor that may be consid-

1988).

ered in determining legislative intent. *People v. Zapotocky*, 869 P.2d 1234, 1239 (Colo. 1994) ("A court also may consider the title of the legislation in resolving uncertainties concerning legislative intent."); *Martinez v. Cont'l Enters.*, 730 P.2d 308, 313 (Colo.1986).

We also note that the reenacted CORA investigatory files exemption was nearly identical to the pre–1977 version, except that the first clause was separated into two clauses, each followed by the words "sheriff, prosecuting attorney, or police department." As noted above, when CORA was originally enacted in 1968, the expression of legislative purpose limited the exemption to records compiled for criminal justice law enforcement purposes. By employing similar language in 1988 to that used in 1968, the General Assembly may have intended that the language would serve that purpose only.

Based on this legislative history, we would tend to view the current investigatory files exemption in CORA as limited to investigatory files compiled for criminal justice purposes, as the district court concluded, and not applicable to files compiled for civil law enforcement purposes.

Yet, in reaching such a conclusion we would be remiss to fail to acknowledge, as noted above, that even after the investigative files exemption was reinserted into CORA, CCJRA continued to contain a provision expressly providing for the nondisclosure of criminal justice investigatory files. If we were to interpret the CORA exemption to apply only to criminal justice records, it would appear that these two statutes duplicate each other and the CORA exemption would be superfluous. The legislature may have recognized this redundancy because it did not delete the exclusion of criminal justice records, subject to the CCJRA, from CORA's definition of "public records." *See* § 24–72–202(6)(b)(I). Thus, to give substance to the CORA exemption, and to interpret the two statutes in harmony, we could conclude that the CORA exemption applies to investigatory files compiled for law enforcement purposes other than criminal justice matters. Yet such an interpretation would strain the plain language of the first two clauses, which are limited to files of any sheriff, prosecuting attorney, or police department.

Because we conclude that the legislative history is not definitive, we turn to a final tool of statutory construction.

### c. Additional Tool of Statutory Construction

As noted above, and as the district court correctly concluded, exemptions from disclosure under CORA are to be narrowly construed. *Freedom Newspapers, Inc. v. Tollefson*, 961 P.2d 1150 (Colo.App.1998); *see, e.g., Denver Publ'g v. Univ. of Colo.*, 812 P.2d at 684–85 (narrowly construing CORA by finding it unreasonable for public institution to restrict access to information by merely placing documents in personnel file; a legitimate expectation of privacy must be present). CORA contains a broad legislative declaration that all public records shall be open for inspection unless exempted by the statute itself or specifically by other law. *Denver Publ'g Co. v. Dreyfus*, 184 Colo. 288, 520 P.2d 104 (1974).

We recognize it is quite possible that the General Assembly intended the investigatory files exemption in CORA to apply to records kept for law enforcement purposes other than criminal investigations. Certainly, state governmental agencies other than sheriffs, prosecuting attorneys, or police departments carry out investigations that generate records where a need for confidentiality may exist. Here, the Board acknowledges that its investigation of licensed appraisers, although accompanied by the possibility of license revocation and fines, is not a criminal proceeding. Yet, the Board's administrative process, including as it does the power to issue subpoenas, the right to a hearing, and guarantees of due process, looks like a quasi-criminal proceeding; and perhaps, as the Board suggests, the names of anonymous complainants, confidential sources, and inculpatory information should be kept confidential even after an investigation is completed.

■ It may well be that as a matter of public policy, the custodian of investigatory files of civil law enforcement proceedings should be permitted to protect the files from

disclosure. Yet, in the face of uncertainty as to whether the General Assembly intended the investigatory files exemption to apply only to criminal justice investigatory files, or also to civil law enforcement investigatory files, we are bound by CORA's language and case law, and we must construe the exemption narrowly. We conclude the CORA exemption applies only to investigatory files compiled for criminal law enforcement purposes. As the supreme court recently stated in a different CORA case: "Should the General Assembly decide to expand the applicability of CORA, it is free to do so." *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1093 (Colo.2011).

Accordingly, the investigatory files exemption of CORA does not protect the records sought in this case, and we turn to the other exemptions urged by the Board.

### B. Deliberative Process

The Board contends that the district court erroneously rejected its decision to bar disclosure of certain records under the deliberative process privilege. We disagree.

As an initial matter, we disagree with the Board that we should apply a de novo standard of review. When reviewing matters of discovery and privilege, we apply an abuse of discretion standard. *City of Colorado Springs v. White*, 967 P.2d 1042, 1057 (Colo.1998) (citing *Bond v. District Court*, 682 P.2d 33, 40 (Colo.1984) (holding that, so long as trial court applies correct legal standard, "[d]iscovery rulings are ordinarily within the discretion of the trial court"), and *In re Sealed Case*, 121 F.3d 729, 740 (D.C.Cir.1997) (noting that appellate court ordinarily reviews trial court's ruling that privilege applies to documents "only for arbitrariness or abuse of discretion")). A court abuses its discretion when it rules based on an erroneous application of the law. *Genova v. Longs Peak Emergency Physicians, P.C.*, 72 P.3d 454, 458–59 (Colo.App. 2003). A trial court's exercise of discretion should not be overturned on appeal unless its ruling was manifestly arbitrary, unreasonable, or unfair. *Id.*

In *City of Colorado Springs v. White*, 967 P.2d at 1049, the supreme court first recognized the common law deliberative process privilege in Colorado. It noted that the deliberative process privilege "rests on the ground that public disclosure of certain communications would deter the open exchange of opinions and recommendations between government officials, and it is intended to protect the government's decision-making process, its consultative functions, and the quality of its decision." *Id.* at 1047. The primary purpose of the privilege is to protect the frank exchange of ideas and opinions critical to the government's decision-making process where disclosure would discourage such discussion in the future. *Id.* at 1051.

*White* also held that the privilege is a qualified one that may be overcome upon a showing that the "discoverant's interests in disclosure of the materials [are] greater than the government's interests in their confidentiality." *Id.* at 1054.

The following year, the General Assembly acknowledged the holding in *White* by adding a statutory deliberative process privilege to CORA's list of exemptions to disclosure. *See* § 24–72–204(3)(a)(XIII), C.R.S.2010. According to the statute, records are protected under the privilege

> if the material is so candid or personal that public disclosure is likely to stifle honest and frank discussion within the government, unless the privilege has been waived.... In determining whether disclosure of the records would cause substantial injury to the public interest the court shall weigh, based on the circumstances presented in the particular case, the public interest in honest and frank discussion within government and the beneficial effects of public scrutiny upon the quality of governmental decision-making and public confidence therein.

*Id.*

This exemption appears to at least partially codify the rule announced in *White*, but does not entirely supplant the common law privilege. Accordingly, there is no conflict between the two authorities and, as the district court did, we look to both *White* and the

statute for guidance on how to apply the deliberative process privilege.

Pursuant to *White*, a key question in determining if the privilege applies is whether disclosure of the material would expose an agency's decision-making process in such a way as to discourage discussion within the agency and thereby undermine its ability to perform its functions. 967 P.2d at 1051. Thus, the privilege only protects material that is predecisional ("generated before the adoption of an agency policy or decision") and deliberative ("reflective of the give-and-take of the consultative process"). *Id.*

Pursuant to the statute, the court must determine, based on the circumstances in the particular case, whether the public interest in honest and frank discussion within government is outweighed by the beneficial effects of public scrutiny upon the quality of governmental decision-making and public confidence therein. § 24–72–204(3)(a)(XIII).

Thus, under both *White* and the statute, this balancing test is flexible on a case-by-case basis. *White*, 967 P.2d at 1054. The initial burden of proof falls upon the government entity asserting the privilege. *Id.* at 1053. Subsequently, where the discoverant makes a sufficient showing of need, the court will conduct an in camera inspection. *Id.* The court should use the inspection "to determine whether the material is privileged, to sever privileged from non-privileged material if severability is feasible, and to weigh the government's need for confidentiality against the litigant's need for production." *Id.* at 1054 (quoting *Hamilton v. Verdow*, 287 Md. 544, 567, 414 A.2d 914, 927 (1980)).

The Board claimed the deliberative process privilege with respect to six records. Four of the records relate to the Stroh and Milenski investigations. The fifth is a draft executive summary discussing the conservation easement investigations and containing Director Toll's notes about the course of action in the investigations. The sixth record is e-mail communications between the current Director Marcia Waters and then Director Toll.

The district court conducted an in camera inspection and rejected the Board's assertion of the deliberative process privilege in regard to all six records. The court found that the benefits of public scrutiny outweighed the need of the agency to protect its internal deliberations. It also found that because Land Owners had been seriously affected by the disciplining of Milenski and Stroh, additional "public scrutiny far outweighs any benefits the agency claims in protecting its internal deliberations of closed investigations, where Board members, participants and sources are granted civil immunity for their good faith participation as a matter of law." Although the district court also determined that portions of sections 12–61–704(1)(c) and 12–61–710(7) supplanted CORA's deliberative process exemption, its decision to reject the Board's assertion of the privilege was primarily based on its conclusion that the public's interest in disclosure outweighed the need for governmental confidentiality.

In regard to the sixth record, the district court separately determined that it should not be disclosed under the attorney-client privilege. Land Owners do not cross-appeal this decision. Accordingly, we will not address the application of the deliberative process privilege to the sixth record.

As the supreme court did in *White*, we have conducted our own in camera review of the documents, and also conclude that they do not contain information that would infringe on the government's ability to have frank and full discussions.

Additionally, because, following *White*, we subject the district court's ruling to a deferential standard of review, we conclude that the district court did not abuse its discretion when it rejected the Board's assertion of the deliberative process privilege. Pursuant to the requirement in section 24–72–204(3)(a)(XIII), the court properly balanced the public's interest against the government's interest, recognizing that scrutiny and accountability in this instance are more significant than the benefits of assuring confidential agency deliberations.

Based on the fact that the agency had taken final action as to both Stroh and Milenski, the public has a strong interest in disclosure of the reasons behind action actu-

ally taken. *See White*, 967 P.2d at 1052. The deliberative process privilege exists in recognition that the public has only marginal interest in the reasons behind policies that have been rejected or in reports that are not the basis for actions taken. However, even pre-decisional material can lose its protected status if it is in fact incorporated into governmental policy or action, as it has in this instance.

The court's conclusion is also supported by the fact that many of the Board's concerns in turning over the documents have been diminished because significant time has passed since the conclusion of the investigation. "As time passes, one might expect the impact of disclosure to diminish. Few officials are likely to be deterred from engaging in robust discussion about a pending policy merely because their communications might become public at some point in the distant future." *White*, 967 P.2d at 1053 n. 9 (quoting R.L. Weaver & J.T.R. Jones, *The Deliberative Process Privilege*, 54 Mo. L.Rev. 279, 293 (1989)). The five records focus on the Stroh and Milenski investigations, which concluded years ago in final agency action. Thus, the public's interest in disclosure is strong and compelling.

The public's interest in disclosure is also furthered by the fact that Director Toll publicly announced an investigation into the conservation easement program, emphasizing that she issued thirty subpoenas in connection with the investigation, and promising that she would aggressively pursue those "whose valuations of conservation easement are not credible." She also stated that she would release details of the "suspect transactions" when the investigation was completed. And, when suspending Milenski's license, the Board justified the action on the basis of protecting the public's "health, safety and welfare." These public announcements support the district court's decision to compel disclosure because the Board brought public attention to the issue.

We disagree with the Board's contention that the district court erroneously considered the personal needs of the individual members of Land Owners. Pursuant to *White*, a district court should weigh the government's need for confidentiality against the discoverant's need for production. 967 P.2d at 1054. The Board attempts to set forth a rigid rule against recognition of any personal needs when balancing the competing interests; yet, *White*'s holding specifically calls for a "flexible" analysis, where the district court can consider "the relevance of the evidence" and the "importance of the material in the discoverant's case," *id.*, which the district court properly did here. CORA's deliberative process exemption specifically requires a district court to consider "the circumstances presented in the particular case." § 24–72–204(3)(a)(XIII). Accordingly, the district court did not abuse its discretion in recognizing the potential effect the discipline of appraisers could have on Land Owners.

Based on the foregoing reasons, we cannot conclude that the district court abused its discretion, or that these records are protected by the deliberative process privilege. The court properly applied the law, and therefore its decision was not manifestly arbitrary, unreasonable, or unfair.

### C. Confidential Information

The Board also asserts that some of the requested records were exempted from disclosure as confidential information under section 24–72–204(3)(a)(IV). We disagree.

The pertinent language of that exemption provides that the custodian of any public records shall deny the right of inspection of the following records, unless otherwise provided by law: "trade secrets, privileged information, and confidential commercial, financial, geological, or geophysical data ... furnished by or obtained from any person." § 24–72–204(3)(a)(IV).

The phrase "confidential commercial [or] financial ... data" is not defined in the statute. In *International Brotherhood of Electrical Workers v. Denver Metropolitan Major League Baseball Stadium District*, 880 P.2d 160, 167 (Colo.App.1994) (*IBEW*), a division of this court held that "under [CORA], it remains insufficient as a matter of law merely to classify the information as confidential." The division further concluded that financial information is confidential for pur-

poses of the statutory exemption if disclosure would be likely either "(1) to impair the government's future ability to gain necessary information; or (2) to cause substantial harm to the competitive position of the person providing the information." *Id.* at 166 (quoting *Freedom Newspapers, Inc. v. Denver & Rio Grande Western R.R. Co.*, 731 P.2d 740, 743 (Colo.App.1986)); *see also Zubeck v. El Paso County Retirement Plan*, 961 P.2d 597, 600 (Colo.App.1998) ("The rationale for [section] 24–72–204(3)(a)(IV) is twofold: to encourage cooperation on the part of those people who are not required to provide information to a governmental agency, as well as to protect the rights of those who are required to provide such information.").

The *IBEW* division further concluded that [a]lthough the statute does not explicitly place the burden of establishing the applicability of the confidential financial exemption upon the party opposing disclosure, because that party is likely to possess superior knowledge as to the nature of the information, common sense and the presumption in favor of disclosure suggest that the burden ought to rest upon it to overcome that presumption and not upon the citizen to demonstrate disclosure is warranted.

880 P.2d at 168.

Although the district court's order did not specifically identify the documents to which the confidential information exemption was sought to be applied, it generally rejected the Board's contention, finding that the Board had failed to meet its burden to demonstrate that disclosure of the documents under CORA would impair the government's future ability to gain necessary information, or cause substantial harm to the competitive position of the person providing the information.

However, the district court also stated that to the extent some of the submitted documents contain confidential financial information, "such as material related to other investigations that the Board is compelled to keep confidential by the Board of Appraisers statute, the Court can and does have the power to redact this information." The court ordered that such records should be turned over to Land Owners with appropriate redactions.

 On appeal, the Board challenges the court's findings that it failed to show that disclosure would impair the government's future ability to gain necessary information. Although it argues that review of this issue concerns the correct application of CORA, and that our review is de novo, because this conclusion is based on factual findings, we apply a clearly erroneous standard of review. *Freedom Newspapers*, 731 P.2d at 743 (affirming the trial court's factual findings in favor of disclosure under section 24–72–204(3)(a)(IV)).

The Board describes the asserted confidential information to include "records containing private individuals' and businesses' conservation easement valuation data used for tax purposes, appraisal dates and other third party information." The information was obtained by the Board from third parties as part of its investigation of licensed appraisers whom these private individuals hired to appraise their conservation easements.

The Board argues that its ability to obtain this type of information will be impaired because citizens will not provide it if they know it may be released pursuant to a CORA request. The district court rejected this argument, concluding that because the Board has broad authority to subpoena persons and documents, it will be able to continue to obtain this information. The court thus found that nothing revealed in response to Land Owners' request will unduly preclude or prevent the Board from obtaining information it needs for future investigations.[6] And, as noted, the district court directed redaction of some information.

---

6. The district court also found that there was no showing that competitive injury would result from disclosure. On appeal, the Board contends that this information has nothing to do with competitive harm. The district court did not assume that the Board had to show both aspects of *IBEW* to establish the records were confidential. Thus given the Board's position, we need not address whether the release of the documents would result in competitive harm.

Because we view the district court's ruling as narrowly limited to the particular documents in this case, which we understand the court reviewed in camera, and because the ruling is based on the factual finding that release of those particular documents will not impair the Board's ability in general to obtain information, we affirm the ruling here.

We first note that we find no evidence in the record cited by the Board, or cited by the district court, demonstrating that the information at issue was voluntarily provided by the third parties, as opposed to having been obtained by Board subpoena. If the information asserted to be confidential was obtained by the Board by virtue of its subpoena power, and was not voluntarily provided to the Board by third parties, its argument as to the need for maintaining confidentiality is undermined with respect to these documents. Based on the record before us, we cannot determine that the asserted confidential information was voluntarily provided.

Furthermore, we note that because citizens generally may hesitant to make personal financial information available to the state, whether voluntarily or otherwise, government agencies sometimes have the power of subpoena. While the Board's argument erects a theoretical construct, the Board has not shown here that the release of this particular financial information would impede its ability to collect similar information in the future.

Finally, we conclude that it falls within the district court's discretion to direct redaction of specific confidential information. Although not expressly recognized under CORA, redaction under the similar provisions of CCJRA has been recognized as an appropriate method for balancing the interest in disclosure against the interest in protecting personal privacy. *See Freedom Colorado Information, Inc. v. El Paso County Sheriff's Dep't,* 196 P.3d 892, 900 n. 3 (Colo. 2008) ("Redaction, as an alternative, may often be a proper choice to carry out the General Assembly's intent because the CCJRA favors disclosure tempered by pro-

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

tection of privacy interests and dangers of adverse consequences at stake in the record's release.").

### V. Attorney Fees

The Board appeals the award of attorney fees to Land Owners, solely on the ground that Land Owners should not be the prevailing party in this case. The Board did not timely file a separate notice of appeal challenging the reasonableness of the work performed or the amount of fees awarded, therefore we do not address the award of attorney fees.

### VI. Conclusion

We conclude that the district court correctly concluded that (1) none of the three exemptions under CORA protects from disclosure the records at issue here, and (2) redaction is appropriate for some of the confidential records.

The order is affirmed.

FURMAN and NEY *, JJ., concur.